**EXHIBIT 50**

On Monday June 16, 2003 at approximately 0300hours this Trooper was dispatched to the Federal Medical Center's Outside Mailroom located on Patton Rd, Devens. I arrived upon the scene at approximately 0310 hours. Upon arrival, FMC employees Officer Jamison Jacques and Lt. James Diamond had secured the area. The mailroom had been vandalized with red spray paint. White shell raw eggs had also been hurled at the building. The raw eggs were wet which indicated that the vandalism had been within a few hours. Due to the lighting conditions, I requested that the scene continued to be secured so that I could take photos during the daylight and search for and collect evidence. Officer Jacques secured the area until 0600 hours. at which point I returned with the C9 digital camera to document the evidence. Lt. James Diamond, the midnight shift's supervisor advised that Officer Jacques had discovered the vandalism while conducting a building check. Jacques stated that he immediately returned to the FMC main building to report the damage.

The graffiti was upon three sides of the mailroom and threatening in content towards a FMC employee, Colleen O'Donnell. Lt. Diamond advised me that O'Donnell had a history of domestic problems with another FMC employee, David Reynoso. The problems arose from an altercation that had taken place approximately one year ago, which resulted in domestic violence charges and a restraining order taken out against Reynoso. Reynoso was currently working his shift at the FMC. Reynoso had been interviewed by myself shortly after I initially arrived at the mailroom at approximately 0350 am. Reynoso consented to a search of his vehicle to which no evidence was found. He stated that he had remained inside the FMC during the entirety of his shift. He did not have any residue of paint on his hands and it was confirmed that he did not at any time leave main FMC building as it would be impossible to do so without being noticed by the front lobby personnel. I returned to the mailroom at approximately 0600 a.m., at which time the sunlight was adequate to collect evidence and take photographs of the scene. The graffiti was painted with red spray paint and egg shells were located on the three sides of the building that had been painted. Lt. Diamond and myself conducted a search for spray paint can, however no can was recovered. No additional items were found that I believed to be connected to the incident.

With Lt. Diamond, Officer Jacques and myself present, ODONNELL arrived at the mailroom parking lot at approximately 0710 hours. She spoke briefly with Jacques, exited her car and approached me. ODONNELL viewed the one side of the building which had "your dead bitch" written upon it. ODONNELL appeared dazed. She stated "I'm dead?" several times. ODONNELL requested to see the other side of the building because she wanted to know what it said there as well. It should be noted that at this time I did not advise ODONNELL that there were other painted statements on the building.

When asked ODONNEL who she believed was responsible, ODONELL did not hesitate to state that it was Reynoso without any doubt. When asked, she claimed that the verbiage was that of Reynoso's. ODONNELL stated that she had no other enemies other than REYNOSO. At this time, at approximately 0725 am, FMC Captain Bollinger arrived on scene, and I conversed with him

BOP1269

On Monday June 16, 2003 at approximately 0300 hours this Trooper was dispatched to the Federal Medical Center's Outside Mailroom located on Patton Rd, Devens. I arrived upon the scene at approximately 0310 hours. Upon arrival, FMC employees Officer Jamison Jacques and Lt. James Diamond had secured the area. The mailroom had been vandalized with red spray paint. White shell raw eggs had also been hurled at the building. The raw eggs were wet which indicated that the vandalism had been within a few hours. Due to the lighting conditions, I requested that the scene continued to be secured so that I could take photos during the daylight and search for and collect evidence. Officer Jacques secured the area until 0600 hours, at which point I returned with the C9 digital camera to document the evidence. Lt. James Diamond, the midnight shift's supervisor advised that Officer Jacques had discovered the vandalism while conducting a building check. Jacques stated that he immediately returned to the FMC main building to report the damage.

The graffiti was upon three sides of the mailroom and threatening in content towards a FMC employee, Colleen O'Donnell. Lt. Diamond advised me that O'Donnell had a history of domestic problems with another FMC employee, David Reynoso. The problems arose from an altercation that had taken place approximately one year ago, which resulted in domestic violence charges and a restraining order taken out against Reynoso. Reynoso was currently working his shift at the FMC. Reynoso had been interviewed by myself shortly after I initially arrived at the mailroom at approximately 0350 am. Reynoso consented to a search of his vehicle to which no evidence was found. He stated that he had remained inside the FMC during the entirety of his shift. He did not have any residue of paint on his hands and it was confirmed that he did not at any time leave main FMC building as it would be impossible to do so without being noticed by the front lobby personnel. I returned to the mailroom at approximately 0600 a.m., at which time the sunlight was adequate to collect evidence and take photographs of the scene. The graffiti was painted with red spray paint and egg shells were located on the three sides of the building that had been painted. Lt. Diamond and myself conducted a search for spray paint can, however no can was recovered. No additional items were found that I believed to be connected to the incident.

With Lt. Diamond, Officer Jacques and myself present, ODONNELL arrived at the mailroom parking lot at approximately 0710 hours. She spoke briefly with Jacques, exited her car and approached me. ODONNELL viewed the one side of the building which had "your dead bitch" written upon it. ODONNELL appeared dazed. She stated "I'm dead?" several times. ODONNELL requested to see the other side of the building because she wanted to know what it said there as well. It should be noted that at this time I did not advise ODONNELL that there were other painted statements on the building.

When asked ODONNEL who she believed was responsible, ODONELL did not hesitate to state that it was Reynoso without any doubt. When asked, she claimed that the verbiage was that of Reynoso's. ODONNELL stated that she had no other enemies other than REYNOSO. At this time, at approximately 0725 am, FMC Captain Bollinger arrived on scene, and I conversed with him

regarding what action would be taken. I advised ODONNEL that it might be possible to gather fingerprints of eggshells and that I would be collecting them as evidence. Looking stunned, ODONNEL turned pale and repeated what I had said to her. I then collected several large eggshells from area. A pair of latex gloves found on scene was collected also, although I did not believe that they were connected to the vandalism, as they did not have any red residue upon them. It was later determined that the gloves had belonged to another FMC employee conducting a tactical exercise in the area three days prior to the incident. Later that day I collected a statement from ODONNELL. The eggshells were hand-delivered to the Devens Crime Scene Services to be examined for fingerprints, however none were recovered.

On June 17, 2003 the following employees of the FMC mailroom were interviewed: Stephen Gagnon, Keith Macdonald and Tom Morris. ODONNELL had been on various leaves for several months due to emotional problems stemming from her domestic altercation with Reynoso. ODONNELL had returned to work at FMC because she was in danger of being terminated as an employee due to her pending A.W.O.L. status. She had returned to the FMC three days prior on June 11, 2003. Interviewed Co-workers displayed a standoffish attitude regarding ODONNEL and conveyed that all mailroom employees conducted as same. Most had not spoken with her upon her return or during her leave of absence. However during this time it was discovered that ODONNEL prior to the vandalism on the building, had requested several days leave for a wedding, but had been denied. It was also discovered that ODONNEL had a pattern of tardiness and rarely appeared for work early. It should be noted that the day the vandalism was discovered, ODONNEL arrived at the mailroom 15 minutes prior to her shift.

Attention was drawn to Officer Jacques who had initially discovered the vandalism. At the time of the discovery, Officer Jacques was under a disciplinary action that kept him confined to the Main FMC building and outside building and perimeter checks had not been one of his duties. It was also discovered that he had been conducting building checks in his personal vehicle, not a departmental vehicle. It was later determined by an interview on 06/18/2003 with Officer Duane Bennett, Officer Jacques's direct supervisor, that he habitually checked buildings in his own vehicle as well as refueling vehicles during his shift.

ODONNEL, at the time of the incident had a significant dating relationship with another FMC employee, Lt. Joseph M. Lavorato. Currently, Lt Lavorato was also the supervisor of David Reynoso. On 06/18/03, Lt. Lavorato was interviewed and made a voluntary written statement regarding his activities prior to the vandalism that weekend. He was unclear about his activities on Sunday 06-15-03, claiming that he went to a store to purchase cigarettes, but he did not recall exactly what store. He stated that he had no problems with Reynoso of any kind and denied having additional knowledge of the vandalism. Lavorato appeared very nervous, with visible perspiration on his forehead and unsteady and very shaky hands. When asked why he was nervous, Lavorato stated that he was nervous because he had never been interviewed by the police before. He stated

that he would be willing to submit to a lie detector test. Lavorato was advised not to discuss the interview with coworkers including ODONNELL. That same date, attempts were made to interview Jamison Jacques, but were unsuccessful due to Jacques taking several hours of sick leave prior to the end of his shift.

It was discovered by conversation with internal investigations Lt. John Pittman, that Lt. Lavorato and ODONNELL had called the prison several times to determine the progress of the investigation. It had been thought that ODONNEL had made several calls to FMC employees and to the administrative assistant of Captain Bollinger (Holly Brodeur) regarding the investigation. On 07/02/03 Holly Brodeur was interviewed and she stated that she had not spoken to ODONNELL since March of that year. Brodeur explained that ODONNELL had a violent verbal and physical altercation with a guest in Brodeur's home, and the two have not spoken since. Also interviewed that day was Officer Lisa Arpano, an employee at FMC that was thought to be close friends with ODONNELL. Officer Arpano stated that she was an acquaintance of ODONNELL'S and did not associate with her socially outside of the work place and had limited conversation with her during the workday. Officer Arpano stated that on June 12, 2003 ODONNEL stated that she was excited about a wedding that she was going to attend the next week.

On 07/03/03 Officer Jacques was interviewed. Jacques stated that although he and ODONNELL were friends, they had not spoken for one to one and a half months before her return to work, and that he was not aware that she had returned to work. He stated that he routinely conducted building checks throughout the shift. His statements about the discovery of the vandalism were consistent with the statements of Officer Bennett. When questioned why he did not radio in the vandalism, rather then returning to the main lobby to report it verbally, he stated that he was not sure if the vandalism had been reported prior and did not want to look foolish by calling it in.

On 07/02/2003 ODONNELL was interviewed at the MSP Devens Barracks. A statement taken regarding her activities the weekend prior to the vandalism and were consistent with that of Lt. Lavarato's. However, she admitted that Lt. Lavorato discussed his interview with her. She was also unsure of her exact whereabouts the evening prior to the vandalism. When asked why she had arrived at work early she stated that she was covering herself because she thought that she was being watched by the administration. When questioned about needing time off for a wedding, ODONNELL stated that she did not really need the time off because all of the wedding activities took place in the evening hours. When asked how she knew that there was additional graffiti on the rear of the building, she stated that upon arrival at the mailroom, she conversed briefly with Officer Jacques, who advised her that the graffiti was "worse on the other side". Jacques during his interview had confirmed that he indicated to ODONNELL that there was more vandalism on the other sides of the mailroom. ODONNELL appeared indignant that she was being interviewed as a possible suspect in the commission of the vandalism. She stated that she had several "friends" that were police officers and that she had talked to them at length about investigations and the interview

process. ODONNELL was also very clear that she wanted Reynoso terminated for his involvement in their past domestic altercation. ODONNELL stated that she was not involved in any way with the vandalism.

Upon completion of my investigation, I cannot draw enough evidence to make criminal charges upon any one particular suspect. However, I cannot clear ODONNELL as a suspect as I have done so with Reynoso, Jacques, and the other mail room staff. It was the strong and majority opinion of those staff members that I have interviewed that ODONNELL is responsible in part, or in entirety, for the vandalism conducted at the mailroom. ODONNELL could not account for her exact whereabouts for Sunday evening June 15, 2003. ODONNELL has displayed habitual tardiness in the past and does not have a history of reporting to work early. However, ODONNELL arrived 15 to 20 minutes prior to her shift the day the vandalism would have been discovered by the mailroom staff. ODONNELL requested taking several days off in order to attend a wedding. The request was denied which caused her to be visibly upset. ODONNELL in my interview with her, stated that she was aware that in a hypothetical situation, an incident such as the vandalism would provide for "administrative" days of leave to the offended party. She also stated that she was very aware that if Reynoso had been found responsible for the vandalism, then he would certainly be terminated from employment from the FMC. Her reaction to my statements of the possible collection of fingerprints from evidence on scene (eggshell) was not one of relief, but instead appeared nervous by her repetition of my statements to her and her facial expression. Lastly, the manner in which the vandalism was written upon the walls is very consistent with ODONNELL's own handwriting. In all of the documents produced by the prison and statements collected from the staff, ODONNELL's name has been spelled as "O'Donnel" (note the apostrophe). The graffiti is consistent with ODONNELL's spelling of her own name and also bears a strong resemblance to the way she writes the letters of her name. Capital O and D, no apostrophe, two N's in the same loop like fashion as spray painted on the mailroom wall and two l's, each a vertical line. However, there is not solid evidence for criminal charges to be made. I respectfully request that this investigation be closed unless new evidence develops.

Respectfully Submitted,

Tpr. EA Labrecque #2883
State Police – Devens

BOP1273