UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COLLEEN O'DONNELL, | ) | Civil Action No: 04-40190-FDS |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO R. GONZALES, ATTORNEY | ) | |
| GENERAL, U.S. DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
|     Defendants, | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff in the above-entitled matter and hereby opposes the Defendants' Motion for Summary Judgment on the grounds that there are substantial and material facts in dispute which present a genuine issue for trial. The Plaintiff incorporates herein, her Concise Statement of Material Facts Of Record Which Present A Genuine Issue To Be Tried contained in which is her Response to the Defendants Facts, together with all attached Exhibits[1]. As further grounds, the Plaintiff asserts the following:

**A.   Summary Judgment Standard.**

Summary Judgment may enter only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that the nonmoving party has failed to establish an essential element of their claim, with respect to which they have the burden of proving at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). In other words, "in a run–of-the-mill civil case," the court must ask "whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court must insist that the party opposing the motion not rest upon "mere

1

allegations," but go beyond the pleadings and by his or her "own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324. But the court should do no more than this in reviewing the quality of the evidence. Anderson, 477 U.S. at 249. The court should "look at the record...in the light most favorable to...the party opposing...the motion...and indulge all inferences favorable to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975)(*quoting* Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486 (1962)). "If after this canvassing of the material presented, the court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion". Anderson, 477 U.S. 242, 106 S.Ct. 2505.

The Defendants are not entitled to Summary Judgment here because they have failed to meet its burden of showing that there exists no material issue of fact to be proved at trial.

**B.      The Defendants' Failed to Accommodate the Plaintiff's Disability.**

To assert a claim for failure to accommodate under the Rehabilitation Act, the Plaintiff must establish:  1) that she suffered from a "disability" within the meaning of the statute; 2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and 3) that despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).

      1.      The Plaintiff Suffers From A Qualifying Disability.

The ADA[2] defines a disability as either 1) a physical or mental impairment which substantially limits one or more of an individual's major life activities; 2) a record of such impairment; or 3) being

---

[1] Rather than re-submit exhibits, the Plaintiff refers to Defendants' exhibits as "DSOF Exhibit" and to her exhibits simply as "Exhibit."
[2] Although the ADA does not apply to this case, the case law construing the ADA generally pertains to claims under the Rehabilitation Act.

regarded as having such an impairment. <u>Calero-Cerezo v. United States Department of Justice</u>, 355 F.3d 6 (1st Cir. 2004); 42 U.S.C. §12102(2). In order to determine if the Plaintiff has a disability, the Court must look at whether the Plaintiff suffered a physical or mental impairment and whether the impairment limited a major life activity. <u>Bragdon v. Abbott</u>, 524 U.S. 624, 630-31 (1998).

The Plaintiff suffers from Post Traumatic Stress Disorder (PTSD) and Depression. She was first diagnosed with this mental disability on June 25, 2002, and was subsequently diagnosed with PTSD by three additional doctors. She has been taking medications for these conditions on and off for four years. (Plaintiff's Statement of Facts [PSOF], ¶¶82-87).

PTSD has been affecting many aspects of the Plaintiff's daily life for as long as she has had the condition. Plaintiff has been impaired in the major life activities of sleeping, eating, thinking, concentrating, remembering, doing housework, and working. All of these impairments are documented in all of the Plaintiff's various medical notes from her various treating psychiatrists. (PSOF ¶93). These impairments have been recognized by the Courts as "major life activities." <u>Criado v. IBM Corp.</u>, 145 F.3d 437, 442-43 (1st Cir. 1998); <u>Lawson v. CSX Transp. Inc.</u>, 245 F.3d 916, 923 (7th Cir. 2001); <u>Whitney v. Greenburg, Rosenblatt, Kull & Bitsoli, P.C.</u>, 258 F.3d 30, 33 n.4 (1st Cir. 2001); <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1168 n.5 (1st Cir. 2002); <u>Carroll v. Xerox Corp.</u>, 294 F.3d at 239; <u>Gelabert-Ladenheim v. American Airlines, Inc.</u>, 252 F.3d 54, 58 (1st Cir. 2001).

    2.    <u>The Plaintiff Could Perform the Essential Functions of Her Job With An Accommodation However the Defendants Failed To Offer One</u>.

The Plaintiff began her employment at FMC Devens in August of 1998. The Plaintiff had never been disciplined until she was reprimanded for being AWOL on June 10, 2004 and had always performed her job duties in an acceptable and satisfactory manner. (PSOF §102; DSOF ¶¶ 1, 141). The Plaintiff made two basic requests for a reasonable accommodation; 1) that she be granted some

3

form of leave; and 2) that Reynoso be removed from her work environment.  Both requests were denied by the Defendants for a variety of reasons.

The Defendants give no definitive reason for why they assert that they could not accommodate the Plaintiff by removing a co-worker who assaulted her.  The Plaintiff feared for her safety at work as long as Reynoso was still working at the institution with her.  Her fears were consistently disregarded by the Defendants.  (DSOF ¶¶ 51-52, 54, 56-57; PSOF ¶¶ 10, 30).  The Plaintiff's doctor believed that she would be able to continue working if Reynoso were not present at the institution.  Dr. Carbone also opined that Reynoso should have been removed from the work place or assurances made that he would have no access whatsoever to the Plaintiff while she was at the workplace.  It is the opportunity for contact and the fear of that contact that was traumatic to the Plaintiff coupled with the restrictions placed upon her which she viewed as punitive that exacerbated her condition.   He further opined that "if [Reynoso] is still there and she's still frightened, there still is an issue of safety, fear, re-traumatization and other issues that go with that." (PSOF ¶91).

While on the face of it removing a co-worker does not seem like a "reasonable" accommodation, one look at Reynoso's history may lead a jury to conclude that either transfering or terminating Reynoso was not so unreasonable.  Reynoso had a previous history of domestic violence which he disclosed to Defendants on his Declaration for Federal Employment.  Reynoso informed the BOP that he was arrested for assault and battery in May, 1991, that once again he admitted to sufficient facts for a finding of guilty, the matter was continued without a finding for one year.  The allegations were that he was arguing with his girlfriend and grabbed her at the chest area and scratched her.  (PSOF ¶96).

When the Defendants finally investigated Reynoso's conduct concerning the assault on April 8, 2002 subsequent to him admitting to sufficient facts for a finding of guilty in District Court, and interviewed Reynoso, he admitted to assaulting the Plaintiff.  (DSOF Exhibit 17).

4

On or about the same time that the Defendants were investigating Reynoso for the April 8, 2002 assault, he was also being investigated and was suspended for one day for another charge of off-duty misconduct; Driving Under the Influence (DUI). (PSOF ¶98). Reynoso also violated the restraining order and the terms of his probation when the Defendants scheduled, and he attended firearms training. (PSOF ¶104).

Last but not least, the restraining order obtained by the Plaintiff prohibited Reynoso from using any kind of firearms and his license to carry firearms was immediately suspended. (DSOF Exhibit 5). Furthermore, while Reynoso was allowed to attend work, it is a requirement of his job and indeed any correctional officers' job at the BOP that they be able to use physical force, including the use of firearms in order to control inmates. This policy is a condition of any BOP correctional officers' employment. (PSOF ¶12). Arguably, this fact alone should have lead to Reynoso's termination.

The Defendants claim that the Plaintiff did not submit sufficient medical documentation and that the documentation submitted was not timely. The Plaintiff asserts and has produced evidence that she did submit sufficient medical documentation whereby at the very least she should have been granted Leave Without Pay (LWOP). Her assertion is supported by the three medical notes which she provided to the Defendants, together with the testimony and report of Dr. Carbone. The adequacy of the Plaintiff's documentation is a genuine issue of material fact in dispute by the parties. (PSOF ¶¶94-95, 105). Even if you assume that the documentation is inadequate, one must consider that the Plaintiff was in an extremely fragile emotional state in the first few months of 2003 and according to Dr. Carbone, her alleged failure to produce the exact medical documentation requested by the Defendants by the arbitrary deadlines which they set for her was a symptom very consistent with her disability (avoidance). (PSOF ¶ 92). Moreover, the Plaintiff had hired an attorney to assist her, however the assistance which she gained from hiring him was relatively non-existent since the Defendants first refused to recognize him as her attorney for a period from January 21, 2003 through March 4, 2003; and then once recognized, refused to respond to his correspondence and questions

5

concerning a possible reasonable accommodation. (PSOF ¶¶ 105-107). "The interactive process requires a great deal of communication between employee and employer." Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 n. 12 (1st Cir. 2000). In short, the Defendants offered an accommodation, but then refused to engage in the interactive process with either Plaintiff or her attorney in order to determine if the accommodation would allow the Plaintiff to perform the essential functions of her job.

Alternatively, the Defendants argue that they did accommodate the Plaintiff. The Defendants claim that by restricting Reynoso *and* the Plaintiff in signing up for overtime, their hours of employment and in the Plaintiff's job assignment, that the Plaintiff was granted the very accommodation which Dr. Milowe requested. This argument is ludicrous. These restrictions had nothing to do with the Plaintiff's disability or offering her an accommodation, and everything to do with granting an accommodation *to Reynoso* to enable him to continue to work, while still complying with the restraining order obtained by the Plaintiff. The Plaintiff perceived these "accommodations" to be discipline against her and otherwise discriminatory and retaliatory. All the Plaintiff wanted was to be returned to the position which she was in prior to the assault on April 8, 2002. She wanted to be able to work her regular hours, rotate her assignment as per normal procedure, sign up or stay for overtime with her co-workers, "roam free" on the premises, and not fear for her safety while working.

**C.    The Plaintiff's Retaliation Claim Should Not Be Dismissed.**

To prove a claim of retaliation the Plaintiff must establish that she engaged in protected conduct, that she experienced an adverse employment action, and that there was a causal connection between the protected conduct and the adverse employment action. Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002).

The Plaintiff engaged in protected activity when she notified the Defendants of her disability and requested a reasonable accommodation and also when she first contacted the EEO Office and then filed an EEO complaint.

6

The adverse employment actions suffered by the Plaintiff were: 1) failing to grant her accommodations for her disability; 2) denying her any and all forms of leave for which she applied; 3) continuing to have her work under restrictions in order to accommodate Reynoso; 4) classifying her as AWOL despite the Defendants knowledge of all the facts and circumstances surrounding her situation; 5) upon her return to work in November of 2003 the Defendants attempted to assign Plaintiff to the Camp (a position where she could not perform her job duties); 6) failing to recognize her attorney and communicate with him concerning a possible accommodation; and finally 7) disciplining the Plaintiff for allegedly being AWOL. (See generally PSOF). The causal link for each of these events can be established by the timing between the protected activity and the adverse action. Each action was close in time to the protected activity.

The Defendants claim to have legitimate, non-discriminatory reasons for each one of the aforementioned adverse actions, however the Plaintiff asserts that those reasons are pre-textual and that there exist numerous facts in dispute such that granting the Defendants' Motion for Summary Judgment on this count would be inappropriate.

The Defendants claim both that their reasons for denying an accommodation (and some form of leave) were legitimate (could not remove a co-worker and she failed to submit sufficient medical documentation) and conversely that they did accommodate the Plaintiff by restricting both she and Reynoso. The Plaintiff's argument with respect to both these points is set forth above, and respectfully refers the Court to those arguments.

As set forth *supra* the Warden was accommodating Reynoso and making changes to the Plaintiff's schedule to enable Reynoso to continue to work while still complying with the restraining order that he was subject to. (PSOF ¶ 61). These scheduling restrictions had nothing to do with accommodating the Plaintiff's disability, and everything to do with restricting the Plaintiff, the victim in this case, who was suffering from a mental disability as a result of Reynoso's conduct, which was

exacerbated by her treatment by the Defendants, in order to accommodate, not her, but Reynoso. (PSOF ¶ 61).

The only reason the Defendants give for their attempt to assign the Plaintiff to the Camp is that they thought they had an agreement with counsel. Warden Winn never had any discussions with Plaintiff's new counsel wherein he offered to allow Plaintiff to work at the Camp. It is highly doubtful that there was any correspondence between the Warden and Plaintiff's former counsel given both their history of poor communication and the lack of any documentation in the record. The Warden sent a letter to the Plaintiff on November 18, 2003 telling her that if she wanted to return to work she would be assigned to the camp. (DSOF Exhibit 59). This arrangement was completely unacceptable to the Plaintiff and is further evidence of retaliation against her. Furthermore, no legitimate non-discriminatory reason for this acton has been articulated by the Defendants. (PSOF ¶78).

Regarding the AWOL discipline, the Defendants claim that the Plaintiff failed to provide sufficient medical documentation and applications for leave in a timely manner, thus they classified her as AWOL. It is the Plaintiff's position that her medical documentation was more than adequate and that had the Defendants accepted the medical documentation provided and allowed her some form of leave of absence, at the very least Leave Without Pay, she would not have been AWOL and therefore would not have been disciplined. There can be no legitimate reason why the Defendants would not grant the Plaintiff Leave Without Pay. In essence, that was exactly what she had anyway, except she was subject to disciplinary action because of the classification. Moreover, had the Defendants recognized the Plaintiff's attorney as her representative, just as they did with her subsequent counsel, it is possible that an acceptable accommodation would have been provided and accepted.

D.    **The Plaintiff's Retaliation Claim Is Not Untimely.**

The Plaintiff's EEO Complaint which was filed on March 31, 2003 made a claim for retaliation and was timely filed within the EEO guidelines. There is no requirement that a Plaintiff make a new

8

complaint each time she experiences a new incident of retaliation. As long as the retaliation is reasonably related to, and grows out of the discrimination complained of to the EEO, a retaliation claim is preserved. Clockdile v. New Hampshire Department of Corrections, 245 F.3d 1 (1st Cir. 2001) (employee's retaliation claims were not precluded from consideration by district court for failure to exhaust her administrative remedies in he raction under Title VII for sexual harassment and retaliation, although the employee never filed the retaliation claim with the EEOC because it related to and grew out of the alleged discrimination).

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests this Honorable Court deny the Defendants' Motion for Summary Judgment as to all counts as there exist genuine issues of material fact appropriate to be tried to a jury.

          The Plaintiff,
          COLLEEN O'DONNELL-LAVORATO

Dated: April 18, 2006          By her attorney:

          __/s/ Dawn D. McDonald_____
          Dawn D. McDonald, Esq.
          BBO# 647256
          Cooley, Shrair P.C.
          1380 Main Street
          Springfield, MA 01103
          (413) 781-0750 (p); (413) 733-3042 (fax)
91654          dmcdonald@cooleyshrair.com

## CERTIFICATE OF SERVICE

I, Dawn D. McDonald, hereby certify that I caused the foregoing to be served upon the Defendant by mailing a copy thereof on this 18th day of April, 2006, via electronic filing as follows:

          Damian Wilmot, Assistant U.S. Attorney
          1 Courthouse Way
          Suite 9200,
          Boston, MA 02210.

          ___/s/ Dawn D. McDonald
          Dawn D. McDonald