UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No: 04-40190-FDS

| | |
|---|---|
| COLLEEN O'DONNELL, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALBERTO R. GONZALES, ATTORNEY | ) |
| GENERAL, U.S. DEPARTMENT | ) |
| OF JUSTICE, | ) |
|     Defendants, | ) |

## PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS OF RECORD WHICH PRESENT A GENUINE ISSUE TO BE TRIED

Now comes the Plaintiff, Colleen O'Donnell (hereinafter referred to as "Plaintiff") and hereby responds first to the Defendants' Statement of Facts (hereinafter referred to as "DSOF") and then further asserts that the facts of record which she contends present a genuine issue to be tried.

### RESPONSE TO DEFENDANTS' FACTS

1. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 1-5.

2. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 6, however would further state that her job as an Inmate Systems Officer (ISO) also required her to respond to emergencies, participate in "fog-watch." (O'Donnell dep., p. 113-114 attached hereto as Exhibit 1). Plaintiff further testified that working overtime in the ISO Department is required when special buses come in, even though it is not specifically listed in the ISO position description. Id., p. 115. Plaintif also testified that when she was the "early person" working in the mailroom, she was required to go to the Main building and pick up the mail in the various departments and then bring it to the mailroom with the assistance of an inmate orderly. Id., p. 102. Plaintiff's mailroom duties required her to work closely with the Special Investigation Services (SIS) department in screening inmate mail for contraband and in screening inmates that were on a "hot list." Id., pp. 47-48; 15. It was not possible for the Plaintiff to perform her receiving and discharge functions from anywhere other than in the Main building and could

1

also not perform her mailroom functions from anywhere on the compound other than in the mailroom.  Id., p. 55.

3. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 7.

4. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 8, however would further state that when she was the "early person" working in the mailroom, she was required to go to the Main building and pick up the mail in the various departments and then bring it to the mailroom with the assistance of an inmate orderly.  Id., p. 102.

5. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 9-10.

6. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 11, however would further state that in the SIS department, Reynoso had access to the Plaintiff's personal information, such as emergency contacts, address and telephone numbers.  Id. p. 133; see also DSOF Exhibit 12.  Moreover, in the SIS department, Reynoso had the ability to watch the Plaintiff on security monitors and throughout their relationship he did just that, frequently yelling at the Plaintiff when he saw her speaking to other male co-workers.  Id.

7. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 12-14.

8. The Plaintiff disputes the allegations in paragraph 15 of DSOF, in that throughout the history of the facts underlying this litigation, and through the litigation itself, the Defendants have continued to use the word "alleged" in referring to Reynoso's conduct in assaulting the Plaintiff.  There is nothing "alleged" about the incident.  Reynoso admitted that he assaulted the Plaintiff, under oath, in Ayer District Court during his plea for the criminal charges against him.  Furthermore, the Bureau of Prisons (BOP) investigated the matter and Reynoso admitted again to having kicked the Plaintiff.  The BOP found the allegations of off-duty misconduct against Reynoso sustained.  (DSOF Exhibits 15, 17).

9. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 16-21.

10. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 22, however would further state that she also informed, both verbally and in writing, Warden Winn, Stephen Gagnon, Fernando Messer, Jerry Martinez, Lois Swiderski, Mark Shaughnessy, Robert Lora, Captain Bollinger, and Dr. Susan Bates of the Employee Assistance Program that she feared for her safety. (DSOF Exhibits 12, 13, 14; O'Donnell dep. pp. 75, 127-133, 139-144).

11. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 23-26.

12. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 27, however would further state that the restraining order also prohibited Reynoso from using any kind of firearms and his license to carry firearms was immediately suspended. (DSOF Exhibit 5). Furthermore, while Reynoso was allowed to attend work, it is a requirement of his job and indeed any correctional officers' job at the BOP that they be able to use physical force, including the use of firearms in order to control inmates. This policy is a condition of any BOP correctional officers' employment. (Warden Winn dep. pp. 27-28, attached hereto as Exhibit 2).

13. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 28-36.

14. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 37, however would further state that while the restraining order *allowed* Reynoso to attend work, it did not *require* him to attend work, and as stated *supra,* it is a requirement of his job and indeed any correctional officers' job at the BOP that they be able to use physical force, including the use of firearms in order to control inmates. This policy is a condition of any BOP correctional officers' employment. (DSOF Exhibit 5; Warden Winn dep. pp. 27-28).

15. The Plaintiff does not dispute the fact in DSOF paragraph 38 that the Warden changed both Reynoso and the Plaintiff's schedules and placed other restrictions upon them, however the Plaintiff disputes that the motivations for these changes were for her benefit and further states that there is a genuine issue of material fact as to whether the restrictions placed on the Plaintiff, which continued through April 22, 2004, in order for Reynoso to be able to comply

3

with his restraining order were for his benefit, exacerbated her disability, and were discriminatory and/or retaliatory. (O'Donnell dep. pp. 105-109, 132-133, 135-136, 174-178, 183-184; Medical Records of Dr. George Milowe, attached hereto as Exhibit 3; Report of Dr. Carbone, attached hereto as Exhibit 4).

16. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 39.

17. The Plaintiff does not dispute that there is a policy that the BOP does not investigate an employee's alleged criminal conduct until his/her criminal case has been adjudicated, however disputes that a Bureau policy *prohibited* the Office of Internal Affairs from investigating Plaintiff's allegations (at least question the assailant) regarding the incident at Mirror Lake when Plaintiff's safety was in issue. Indeed, when an investigation was conducted and Reynoso was questioned, he admitted to the assault. (DSOF Exhibit 17).

18. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 41-43.

19. The Plaintiff denies the allegations as stated in DSOF paragraph 44. The Plaintiff was called by Fernando Messer and informed that she had been approved for administrative leave for the remainder of the week of April 8, 2002, however specifically denied that she requested any additional administrative leave beyond the two days initially approved. This additional leave was granted prior to Mr. Messer learning from the Plaintiff that she felt unable to return to work. (O'Donnell dep. pp. 95-96).

20. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 45.

21. The Plaintiff does not dispute the allegations in DSOF paragraph 46 insofar as her title and grade did not change. Her compensation *rate* did not change, however because she was unable to work overtime due to the restrictions placed upon her and because she was denied any form of paid leave as an accommodation for her disability, she did suffer a loss of pay. (See generally, DSOF Exhibit 9, 19, 30, 31, 35).

22. The Plaintiff disputes the facts as alleged in DSOF paragraph 47 insofar as she denies admitting that working overtime is not a part of her job duties and responsibilities as an ISO. It may not be written in her position description, however Plaintiff testified that her job as an Inmate Systems Officer (ISO) also required her to respond to emergencies, participate in "fog-watch." (O'Donnell dep., p. 113-114). Plaintiff further testified that working overtime in the ISO Department is required when special buses come in, even though it is not specifically listed in the ISO position description. Id., p. 115. Furthermore, Plaintiff was restricted in working overtime in the ISO department because it was required that she leave the institution "no later than 3:00 p.m." (DSOF Exhibit 9). Any special buses which would require the Plaintiff to process inmates in receiving and discharge with the rest of her co-workers arrived at the institution after 3:00 p.m., so Plaintiff could not work that overtime. (O'Donnell dep., pp. 117-118).

23. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 48, however would further state that ordering Reynoso not to work an armed post is an impossibility as according to the Warden's testimony it is a requirement of his job and indeed any correctional officers' job at the BOP that they be able to use physical force, including the use of firearms in order to control inmates. This policy is a condition of any BOP correctional officers' employment. (DSOF Exhibit 5; Warden Winn dep. pp. 27-28).

24. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 49.

25. The Plaintiff disputes the allegations in DSOF paragraph 50. Plaintiff admits that she and Reynoso telephoned one another, however denies that the calls were to "discuss their relationship." The only thing she remembers is that both parties "cried a lot," and that Reynoso talked about the upcoming trial and what would happen to him and his mother if he lost his job and could not pay the rent. He also told Plaintiff that he did not know how he would pay his mother's medical bills and that she was very sick. He told the Plaintiff that he still loved her

5

and he did not know what he would do if he lost his pay and he and his mother were thrown out in the street. (O'Donnell dep. pp. 120, 157-162). Perhaps not surprisingly, the calls stopped after Reynoso's Court date and plea. Id.

26. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 51-52.

27. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 53, however would further state that the Defendants cannot presume to know what Reynoso knew or did not know about the Plaintiff's whereabouts as she had moved subsequent to her break-up with him.

28. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 54.

29. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 55, however reiterates that there exists a genuine issue of material fact as to whether restrictions should have been placed upon her at all so that Reynoso could comply with the restraining order against him. See paragraph 15 *supra*. The Plaintiff perceived these restrictions as discipline. Id., 105-109.

30. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 55, however further states that the BOP was very well aware of Reynoso's previous history of domestic violence as he disclosed it on his Declaration for Federal Employment. Reynoso informed the BOP that he was arrested for assault and battery in May, 1991, that once again he admitted to sufficient facts for a finding of guilty, the matter was continued without a finding for one year. (Lord dep. pp. 30-31, attached hereto as Exhibit 5). The allegations were that he was arguing with his girlfriend and grabbed her at the chest area and scratched her. Id., 110-112.

31. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 57.

32. The Plaintiff disputes the facts as alleged in DSOF, paragraph 58 insofar as she denies that Associate Warden Randy Meeks met with her "to discuss her concerns." The sole purpose of that very brief meeting was to inform the Plaintiff that the BOP would not be conducting another assessment for workplace violence. (O'Donnell dep. p. 145).

33. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 59.

34. The Plaintiff disputes the facts as alleged by DSOF, paragraph 60 insofar as the Plaintiff told Reynoso that she felt badly about pressing charges against him given the fact that he was calling her and talking about the upcoming trial and what would happen to him and his mother if he lost his job and could not pay the rent. He also told Plaintiff that he did not know how he would pay his mother's medical bills and that she was very sick. He told the Plaintiff that he still loved her and he did not know what he would do if he lost his pay and he and his mother were thrown out in the street. (O'Donnell dep. pp. 120, 157-162). In the face of all of this, the Plaintiff told him that she did not want to pursue the charges against him, however, she never told him that she would not press charges. Id.

35. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 61.

36. The Plaintiff disputes the facts as alleged in DSOF, paragraph 62 in that she never said that she was not going to pursue charges against Reynoso, and therefore did not change her position. The Plaintiff gained support from a victims of domestic violence support group and her family and so was able to resist Reynoso's pressure to drop the charges. Id., pp. 163-164.

37. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 63.

38. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 64, however would like to clarify that, as the Court well knows, in order for the Court to enter a finding of sufficient facts, the Defendant must admit to the facts in Court, which Reynoso did in this case. (DSOF Exhibit 15, 17).

39. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 65, however would add the following facts: At the meeting between the Plaintiff, Warden Winn and her supervisor, Steve Gagnon, Mr. Gagnon discussed his need for the Plaintiff to return to her duties in Receiving and Discharge as she had things to learn and had to get up to speed. The Warden responded that she should give him until Monday or Tuesday, let him "figure this all out," and he would have her back to her normal schedule. (O'Donnell dep. pp. 169-170).

40. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 66.

41. The Plaintiff disputes the allegations contained in DSOF, paragraph 67 insofar as she was supposed to have rotated out of the mailroom to Receiving and Discharge, and therefore, she was not assigned to her regular duties. (O'Donnell dep. pp. 169-170). This event was especially upsetting to the Plaintiff because she believed that now that Reynoso had admitted in Court that he had assaulted her and that her allegations had been proven to be true, she believed that she would no longer be restricted as she had been previously. This together with the fact that the Warden told her that she would be back on a normal schedule in Receiving and Discharged caused the Plaintiff extreme distress when she was informed that she would again/still be restricted to the mailroom and not allowed to rotate to her other department as promised still because Reynoso must be accommodated so that he could work while subject to the restraining order. Id. at 171-177.

42. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 68-70, and 70[sic].

43. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 71.

44. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 72.

45. The Plaintiff disputes the allegations in DSOF, paragraph 73 insofar as she testified that there was no accommodation that the BOP could have provided her that would have allowed her to return to work on January 8, 2003. She may have been able to return on January 27, 2003. (O'Donnell dep. pp. 207-208).

46. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 74.

47. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 75, however further states that Dr. Fletcher's opinion was based upon either a misunderstanding or a mis-reading of Dr. Milowe's note, as nowhere in Dr. Milowe's note does it state that the Plaintiff's disability was "completely reversible" depending on environmental factors. (DSOF Exhibit 21; Lord dep. pp. 66-67). The Plaintiff asserts that there is a very genuine issue of material fact as to the

8

    adequacy of the medical documentation provided to the Defendants in this case which the allegations in paragraph 75 are at the root of. (Carbone deposition, pp. 90-91 attached hereto as Exhibit 6; Exhibit 4).

48. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 76.

49. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 77, however would add that the release which Ms. Lord asked the Plaintiff to sign requested "any information concerning my medical history," that the information "may be released to third parties as necessary," and released "any individual" from "any and all liability for damages of whatever kind..." (DSOF Exhibit 24). Given the nature of the document, the Plaintiff sought the advice of an attorney. (O'Donnell dep. p. 191-192).

50. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 78 and would add only that she believes the reason she needed more time to return the medical release was to have an opportunity to consult with her attorney, who later determined that the release was not in accordance with the privacy laws and asked the Defendants to retract the medical authorization. (Id., pp. 193; DSOF Exhibit 31).

51. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 79.

52. The Plaintiff disputes the allegations in DSOF, paragraph 80. The Plaintiff testified at her deposition at pp. 194-195 that she could not recall whether she had provided the Defendants with additional medical documentation at that time. However, the Plaintiff did provide three notes from her psychiatrist from January 8 through January 31, 2003 detailing very specifically her condition and symptoms. (See DSOF Exhibits 21, 29, 34). The sufficiency of this medical documentation presents a genuine issue of material fact in this case.

53. The Plaintiff disputes the characterization of the allegations concerning a communication by Mr. Gagnon in DSOF, paragraph 81. Gagnon did not request that Plaintiff provide further medical information to support Dr. Milowe's alleged conclusion that she "was totally disabled

9

    based upon environmental factors." That was not his conclusion, but that of Dr. Fletcher. (See paragraph 47 *supra*; see also DSOF Exhibit 26 which speaks for itself). Moreover, Plaintiff did supply additional information from Dr. Milowe on both January 28, 2003 and January 31, 2003 which should have satisfied the Defendants' queries. (DSOF Exhibits 29 and 34; Winn Dep. p. 84).

54. The Plaintiff disputes the allegations in DSOF, paragraph 82 and further asserts that the motivations behind the Defendants denial of her leave are hotly contested and she believes a pretext for discrimination. Moreover, as one of the criteria for the Plaintiff's disability is "avoidance," and given the fact that the BOP refused to recognize her attorney for an extended period of time (from January 21, 2003 until March 4, 2003), it is Plaintiff's contention that given her state of mind during the month of January in 2003, given the fact that the Defendants failed to grant her a reasonable accommodation, that her disability made it almost impossible for her to comply with the unreasonable requests of the Defendants. (Exhibit 4; O'Donnell dep. pp. 174-179; Winn dep. pp. 85-86).

55. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 83.

56. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 84--90.

57. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 91, however further states and clarifies that she was contacted by her supervisor on the same day that Attorney Rizzitelli informed the Defendants of his representation of the Plaintiff. Mr. Gagnon informed the Plaintiff that the Warden had received a letter from her attorney. At this time the Plaintiff never said that she did not have an attorney or that they did not have permission to speak with him. Moreover, Gagnon did not tell her that she had to give them permission to speak with him. (DSOF Exhibit 32). Additionally, when the Plaintiff retained new counsel, she was not required to give them special permission to speak with her; a simple letter of representation, similar to that of Attorney Rizzitelli's, was all that was required. (Lord dep. pp. 77-79; Letter

    attached from Attorney Dawn McDonald to Warden Winn dated April 23, 2004, attached hereto as Exhibit 7).

58. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 92, however further clarifies that the Defendants have always assumed that "removal" meant termination. Plaintiff testified that removal meant either transfer to another facility, reassignment to the camp, or termination. (O'Donnell dep. pp. 240-241).

59. The Plaintiff disputes the allegations in DSOF, paragraph 93 insofar as she denies that the Warden was "trying to accommodate the Plaintiff by placing her and Reynoso on different shifts." In actuality, the Warden was accommodating Reynoso and making changes to the Plaintiff's schedule to enable Reynoso to continue to work while still complying with the restraining order that he was subject to. (Winn dep. pp. 49-51). With regard to the Warden's offer to place Reynoso at the camp, on at least three occasions Attorney Rizzitelli wrote to the Warden stating that this may be a responsive accommodation and asking the Warden to provide more details as to how this plan would affect the Plaintiff. The Warden never responded to Attorney Rizzitelli's request for additional information. (See documents attached hereto as Exhibit 8).

60. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 94.

61. The Plaintiff disputes the allegations as set forth in DSOF, paragraph 95. The Defendants are very well aware that the accommodation requested by Dr. Milowe was not ever granted to the Plaintiff. As set forth *supra* the Warden was accommodating Reynoso and making changes to the Plaintiff's schedule to enable Reynoso to continue to work while still complying with the restraining order that he was subject to. (Winn dep. pp. 49-51). These scheduling restrictions had nothing to do with accommodating the Plaintiff's disability, and everything to do with restricting the Plaintiff, the victim in this case, who was suffering from a mental disability as a result of Reynoso's conduct, which was exacerbated by her treatment by the Defendants, in

order to accommodate, not her, but Reynoso. (Exhibit 4; Carbone Dep. pp. 123-126). The fact of the matter is that the Plaintiff and Reynoso were working in the same facility; FMC Devens. Moreover, on at least two occasions Reynoso did violate the restraining order; once passing the Plaintiff in the parking lot because he was working overtime, and once when he violated his probation and was ordered by BOP officials to report for firearms training. (O'Donnell dep. pp. 256-257). Additionally, Reynoso and the Plaintiff were scheduled by BOP officials to attend training together. (Id. at 212; 250). While the Plaintiff's deposition testimony states that she and Reynoso were assigned to different buildings on different shifts, and that they were largely separated from each other, that fact is that this was only accomplished by restricting the Plaintiff in addition to Reynoso so that he could comply with his restraining order. (Winn dep. pp. 49-51). From Plaintiff's view, this is hardly an acceptable accommodation, however this issue presents a genuine issue of material fact.

62. The Plaintiff disputes the allegations as set forth in DSOF, paragraph 96 insofar as the Defendants allege that Attorney Rizzitelli's request for elaboration on the Warden's proposal to assign Reynoso to the Camp was "disingenuous." Attorney Rizzitelli did not ask the Warden to elaborate specifically on assigning Reynoso to the Camp, but rather to "elaborate on this proposed resolution *so that we may fully understand any impact on Colleen*." (emphasis added)(Exhibit 8). This is a perfectly legitimate inquiry. Unfortunately, the neither the Warden nor anyone else ever responded to Attorney Rizzitelli's five requests for elaboration. Id.

63. The Plaintiff disputes the allegations as set forth in DSOF, paragraph 97. While the proposal to place Reynoso at the Camp may have been clear, any impact to her was not clear and was never addressed or discussed in any way despite repeated inquiries. Id.

64. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 98, however further states that she was contacted by her supervisor on the same day that Attorney Rizzitelli

12

informed the Defendants of his representation of the Plaintiff. Mr. Gagnon informed the Plaintiff that the Warden had received a letter from her attorney. At this time the Plaintiff never said that she did not have an attorney or that they did not have permission to speak with him. Moreover, Gagnon did not tell her that she had to give them permission to speak with him. (DSOF Exhibit 32). Additionally, when the Plaintiff retained new counsel, she was not required to give them special permission to speak with her; a simple letter of representation, similar to that of Attorney Rizzitelli's, was all that was required. (Lord dep. pp. 77-79; Exhibit 7).

65. The Plaintiff disputes the allegations as set forth in DSOF, paragraph 99 and further refers the Court to paragraphs 54, 57, 59, 61, and 62 *supra* for the facts upon which she contends that there is a genuine issue of material fact for trial.

66. The Plaintiff disputes the allegations as set forth in DSOF, paragraph 100 in that it was the Warden who was failing to provide information regarding his proposed accommodation despite the fact that Attorney Rizzitelli had indicated to him that it may be a viable accommodation. (See letter dated March 24, 2003 attached hereto in Exhibit 8).

67. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 101—106.

68. The Plaintiff disputes the allegations in DSOF, paragraph 107 only in that it was Attorney Rizzitelli who first wrote to the Warden on June 4, 2003 advising him that the Plaintiff wanted to return to work and enclosing a doctor note which allowed her to do so and asking how the Defendants intended to protect the Plaintiff from Reynoso. (Exhibit 9). On June 9, 2003 Attorney Rizzitelli sent another letter to the Warden requesting the same information, because once again, the Warden failed to respond to him. (Exhibit 10). Finally the Warden responded (undated letter attached hereto as Exhibit 11), indicating that essentially he had no intention of accommodating the Plaintiff because "the issues between your client and Mr. Reynoso have been resolved by the Courts of the Commonwealth of Massachusetts," and that they would be

"holding both employees accountable for their behavior." The Warden indicated that the Plaintiff could return to work on June 11, 2003. Id.

69. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 108—112.

70. The Plaintiff disputes the allegations in DSOF, paragraph 113 only in that the Plaintiff's fear was not alleged, she was upset and emotionally distressed over this incident. (Winn dep. p. 105).

71. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 114.

72. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 115, however she does absolutely deny that she had any involvement in the mailroom incident and was indignant that she was considered a suspect. (DSOF Exhibit 50).

73. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 116-117.

74. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 118, however further states that the Plaintiff is the only employee that he has ever ordered to call in twice daily while out on administrative leave. (Winn dep. p. 30)

75. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 119—126.

76. The Plaintiff disputes the facts as alleged by DSOF, paragraph 127 insofar as she only received one message from Mr. Gagnon. (O'Donnell dep. pp. 278-279).

77. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 128—137 [sic][1].

78. The Plaintiff disputes the facts as alleged by DSOF, paragraph 138 [sic]. Warden Winn never had any discussions with Plaintiff's new counsel wherein he offered to allow Plaintiff to work at the Camp. The Warden sent a letter to the Plaintiff on November 18, 2003 telling her that if she wanted to return to work she would be assigned to the camp. (DSOF Exhibit 59). This arrangement was completely unacceptable to the Plaintiff and is further evidence of retaliation

---

[1] The numbering on p. 22 of Defendants' Statement of Facts appears to be out of sequence. Plaintiff will respond to and refer to the paragraphs as numbered.

14

against her. (See Letter from Attorney Dawn McDonald to Attorney Kelly McDonald dated November 18, 2003, attached hereto as Exhibit 12).

79. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 139—140 [sic].

80. The Plaintiff does not dispute the facts as alleged by DSOF, paragraphs 136—140 [sic].

81. The Plaintiff does not dispute the facts as alleged by DSOF, paragraph 141, however further states that the medical documentation provided by the Plaintiff to the Warden from Dr. Ackerman regarding the investigation into her AWOL did not provide any more detail regarding the Plaintiff's condition than all of the medical notes written by Dr. Milowe and provided to the BOP, however now this note was considered and given weight by the Defendants in reducing the Plaintiffs proposed discipline to a letter of reprimand. (Letter from Dr. Ackerman dated December 16, 2003, attached hereto as Exhibit 13).

## **PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS IN DISPUTE**

### THE PLAINTIFF SEEKS PSYCHIATRIC TREATMENT

82. On February 2, 2002 the Plaintiff first began treating with Dr. Milowe for depression relating to her abusive relationship with her boyfriend and co-worker, David Reynoso. She reported that Reynoso was "vicious and mean" and that he was physically abusive; "kicking and punching." Her next two visits to Dr. Milowe showed some improvement until her visit on May 8, 2002 wherein she reported being attacked by Reynoso and reported that he had threatened to kill her. The doctor prescribed anti-anxiety and sleeping medications and referred the Plaintiff to a domestic violence women's support group. On June 25, 2002, Dr. Milowe diagnosed the Plaintiff with Post Traumatic Stress Disorder ("PTSD"). (Exhibit 3).

83. The Plaintiff treated with Dr. Milowe through June of 2003. (Exhibit 3). Because she had moved to Leominster from Malden she decided to change doctors and began seeing a new psychiatrist, Dr. Brian Ackerman. (O'Donnell dep. P. 288). Dr. Ackerman also diagnosed the Plaintiff with PTSD. (Dr. Ackerman treatment notes attached hereto as Exhibit 14).

15

84. The Plaintiff treated with Dr. Ackerman through April of 2004. (Exhibit 13). Thereafter, Plaintiff began treating with another psychiatrist, Dr. Barbara Wissner who also diagnosed the Plaintiff with PTSD. (Dr. Wissner treatment notes attached hereto as Exhibit 15). The Plaintiff continues to treat with her to date. (O'Donnell dep. p. 308).

85. Dr. Victor Carbone is a licensed Psychologist hired by the Plaintiff in this case to render an opinion on matters related to her psychological state and her disability of PTSD. (Curriculum Vitae of Dr. Carbone, attached hereto as Exhibit 16).

86. Dr. Carbone conducted an in-depth interview of the Plaintiff and also conducted formal psychological testing. The testing included the Personality Assessment Inventory, Basic Personality Inventory and Detailed Assessment of Post Traumatic Stress. (Exhibit 4; Carbone Dep. pp. 29-30).

87. The testing conducted by Dr. Carbone demonstrated consistently that the Plaintiff suffers from PTSD. Her scores were "off the charts." (Id. at 38-42).

88. Dr. Milowe, and indeed all of the Plaintiff's treating doctors took notes based upon their interviews with her. (Id. at p. 70; Exhibits 14, 15). Most doctors do not write down every criteria for PTSD when they are diagnosing it. (Carbone dep. p. 85).

89. Based upon a reading of Dr. Milowe's notes, Dr. Carbone believes that Dr. Milowe's note of January 8, 2003 was consistent with a diagnosis of PTSD based on the symptomatology being presented by a psychiatrist. (Id. at 91). He considered this, together with the other notes provided to the BOP to be ample documentation to support the Plaintiff's diagnosis. (Id. p. 131-132; Exhibit 4).

90. Dr. Carbone stated that for the BOP to ask for the Plaintiff's entire medical record was an invasion of her privacy. Id.

91. Dr. Carbone also opined that Reynoso should have been removed from the work place or assurances made that he would have no access whatsoever to the Plaintiff while she was at the

workplace. (Id. pp. 121-122). It is the opportunity for contact and the fear of that contact that was traumatic to the Plaintiff coupled with the restrictions placed upon her which she viewed as punitive that exacerbated her condition. (Id. pp. 124-126). He further opined that "if [Reynoso] is still there and she's still frightened, there still is an issue of safety, fear, re-traumatization and other issues that go with that." (Id. p. 137).

92. Dr. Carbone states in his report at p. 9, "it is important to note that with PTSD avoidant behavior is not uncommon and if, indeed, [the Plaintiff] did not provide all the necessary documentation to fully substantiate every various symptom that she had, this would not be unusual for an individual with PTSD." (Exhibit 4, p.9).

93. The various life activities that the Plaintiff has been impaired in are sleeping, eating, thinking, concentrating, doing housework, remembering, and working. (Carbone dep. pp. 95-103; Wissner notes, Exhibit 15; Ackerman notes, Exhibit 14, Milowe notes, Exhibit 3).

94. Ms. Lord testified during the EEO investigation that Dr. Fletcher was asked to sit on the Voluntary Leave Transfer Program (VLTP) Committee to explain PTSD to the Committee. According to her, "And from his explanation that it appeared—Ms. O'Donnell's psychiatrist had only seen her on one occasion and to come up with that diagnosis, in his professional opinion, was not possible and the committee disapproved her request." (Affidavit of Cynthia Lord, attached hereto as Exhibit 19, p. 7). The Plaintiff had in fact been treating with Dr. Milowe since February 2, 2002, for almost one year as of the date of the meeting of the VLTP Committee. (Exhibit 3).

95. Ms. Lord also testified that the Plaintiff could have submitted additional medical documentation to the VLTP Committee for reconsideration of their decision. (Exhibit 19, p. 7). This however is contrary to the letter from the Warden to the Plaintiff wherein he informed her that the decision of the Committee is final. (DSOF Exhibit 33).

## DAVID REYNOSO

96. Reynoso had a previous history of domestic violence which he disclosed to Defendants on his Declaration for Federal Employment. Reynoso informed the BOP that he was arrested for assault and battery in May, 1991, that once again he admitted to sufficient facts for a finding of guilty, the matter was continued without a finding for one year. (Lord dep. pp. 30-31, attached hereto as Exhibit 5). The allegations were that he was arguing with his girlfriend and grabbed her at the chest area and scratched her. Id., 110-112.

97. When the Defendants finally investigated Reynoso's conduct concerning the assault on April 8, 2002 subsequent to him admitting to sufficient facts for a finding of guilty in District Court, and interviewed Reynoso, he admitted to assaulting the Plaintiff. (DSOF Exhibit 17).

98. On or about the same time that the Defendants were investigating Reynoso for the April 8, 2002 assault, he was also being investigated and was suspended for one day for another charge of off-duty misconduct; Driving Under the Influence (DUI). (Winn dep. p. 61, 68-69)

99. The Warden considers assault and battery with a dangerous weapon to be a more serious offense than a DUI. (Id. p. 69).

100. Reynoso received a 21 day suspension for his off-duty misconduct of assaulting the Plaintiff, even though he had the prior suspension for the DUI. (Id. p. 63).

101. The BOP did not agree with the recommendation of Captain Bollinger to terminate Reynoso. In fact they did not seem to think that a boot was a "dangerous weapon" and suggested they compare the offense to that of other employees who were disciplined for DUI. (E-Mail dated 4/30/03 to Cindy Lord, attached hereto as Exhibit 18).

102. The Plaintiff had never been disciplined since the beginning of her employment until she was reprimanded for being AWOL and had always performed her job duties in an acceptable and satisfactory manner. (Winn dep. pp. 31-32).

103. The initial disciplinary recommendation by her supervisor concerning the AWOL offense was that she be suspended for 30 days. (Id. p. 32).

104. Reynoso also violated the restraining order and the terms of his probation when the Defendants scheduled, and he attended firearms training. (Id. p. 75-77).

## ATTORNEY RIZZITELLI

105. The Plaintiff hired Attorney Rizzitelli after being asked to sign the Defendants' medical authorization. (O'Donnell dep. p. 193). Attorney Rizzitelli sent a letter of representation to the Warden and Ms. Lord on January 21, 2003 which letter also demanded that they "retract" the overbroad medical release. (DSOF Exhibit 31).

106. The Defendants refused to recognize the Plaintiff's attorney from January 21, 2003 until March 4, 2003. (See ¶54 *supra*).

107. During this timeframe, on January 27, 2003, the Warden made an offer of an accommodation in the form of re-assigning Reynoso to the Camp. (DSOF Exhibit 33). On February 10, 2003, Attorney sent the first of five letters to the Warden asking him to elaborate on the effects this proposal would have on Colleen's work environment. (Exhibit 8). The Warden never responded until March 6, 2003 and March 21, 2003 when he reiterated that the Plaintiff had never responded to his offer to accommodate her by putting Reynoso at the Camp, even though he never answered Attorney Rizzitelli's questions. (DSOF Exhibits 37 and 38). Attorney Rizzitelli sent one more letter to the Warden again asking for clarification. (DSOF Exhibit 39). The Warden never responded and thereafter communications ceased between the parties.

## PLAINTIFF'S DISCIPLINE FOR BEING AWOL

105. Subsequent to her return to work, the Defendants conducted an investigation into her two charges of being AWOL. (DSOF ¶136). Plaintiff's counsel responded to the charges on her behalf, setting forth a detailed statement of the Plaintiff's position on the charges together with

19

supporting documentation. (See Letter dated May 12, 2004 from Attorney Dawn McDonald to Warden Winn together with exhibits attached hereto as Exhibit 17)[2].

                            The Plaintiff,
                            COLLEEN O'DONNELL-LAVORATO

Dated: April 18, 2006                   By her attorney:

                            ___/s/Dawn D. McDonald____
                            Dawn D. McDonald, Esq.
                            BBO# 647256
                            Cooley, Shrair P.C.
                            1380 Main Street
                            Springfield, MA 01103
                            (413) 781-0750 (p)
                            (413) 733-3042 (fax)
91639                            dmcdonald@cooleyshrair.com

**CERTIFICATE OF SERVICE**

     I, Dawn D. McDonald, hereby certify that I caused the foregoing to be served upon the Defendant by mailing a copy thereof on this 18th day of April, 2006, via electronic filing as follows:

                Damian Wilmot, Assistant U.S. Attorney
                1 Courthouse Way
                Suite 9200,
                Boston, MA 02210.

                            ____/s/ Dawn D. McDonald_____
                            Dawn D. McDonald

---

[2] Rather than repeat the facts as alleged in Exhibit 17, the Plaintiff requests that the Court refer to that Exhibit together with its attachments for additional facts which she alleges are in dispute.