**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| COLLEEN O'DONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: 04-40190-FDS |
| v. | ) | |
| | ) | |
| ALBERTO R. GONZALES, Attorney | ) | |
| General of the United States, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT PRETRIAL MEMORANDUM**

1.     **CONCISE SUMMARY OF EVIDENCE**

     a.     **Plaintiff's Case**

          The Plaintiff intends to prove that she suffers from a disability within the meaning of the Rehabilitation Act, that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation, and that despite the BOP's knowledge of her disability, it did not offer a reasonable accommodation and failed to engage in the interactive process with the Plaintiff. The Plaintiff will further prove that she suffered damages as a result of the illegal discrimination and that the Defendant acted with malice and reckless indifference to the Plaintiff's federally protected rights such that punitive damages should be awarded.

          1.     The evidence will show that the Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) on June 25, 2002 and that thereafter she was diagnosed with PTSD by three additional doctors. The evidence will further show that the Plaintiff's disability has impaired her in a number of major life activities including sleeping, eating, thinking,

- 1 -

concentrating, remembering, doing housework, and working.  Moreover the evidence will show that there is a record of the Plaintiff being so impaired.

2.     The evidence will show that the Plaintiff did provide the BOP with sufficient evidence of her disability and that even faced with that knowledge and repeated requests for a reasonable accommodation, the BOP failed to engage in the interactive process, failed to offer the Plaintiff a reasonable accommodation, and in fact disciplined the Plaintiff.  The evidence will show that the Plaintiff's disability made it impossible for her to comply with the unreasonable requests and demands of the BOP and their discriminatory conduct further exacerbated the Plaintiff's condition.

3.     The evidence will also show that the alleged "accommodation" offered by the BOP; changing the Plaintiff's work hours and job duties was not an accommodation for her, but rather an accommodation for her attacker, David Reynoso so that he could comply with the terms of the restraining order against him.  Moreover, the evidence will show that one of the accommodations requested by the Plaintiff, that Reynoso be removed from the workplace, was both reasonable and within the Warden's discretion to allow.

**b.     <u>Defendant's Case</u>**

The government will seek to establish at trial that the following propositions: (1) the Plaintiff is not a qualified disabled person under the Rehabilitation Act; (2) even if she were a qualified disabled person under the Rehabilitation Act, Plaintiff cannot prove that the BOP had sufficient knowledge of her disability because she admittedly refused to engage in the interactive process; and (3) even if she were a qualified disabled person under the Rehabilitation Act, and (3) even if the BOP had sufficient knowledge of her disability, the BOP provided her with

reasonable accommodations, including the very accommodation that her doctor recommended. More specifically, the government anticipates introducing evidence at trial sufficient to establish the following:

1.  The evidence will show that Plaintiff is not a qualified disabled person under the Rehabilitation Act.  Plaintiff does not currently have Post Traumatic Stress Disorder ("PTSD"), nor has she had PTSD at anytime after April 2002.  To the contrary, Plaintiff's symptoms are consistent with a diagnosis of Acute Stress Reaction after the assault in April 2002, and a current diagnosis of Generalized Anxiety Disorder.  Plaintiff's current treatment is reasonable.  Even if Plaintiff could show that she suffered from PTSD, the evidence will show that that condition did not substantially limit any major life activities, including her ability to sleep, eat, think, concentrate, or work.

2.  Even assuming *arguendo* that Plaintiff is a qualified disabled person under the Rehabilitation Act, the evidence will show that BOP did not have sufficient knowledge of her disability because Plaintiff admittedly refused to engage in the interactive process.  The evidence will show that, from January 8, 2003, to November 2003, Plaintiff failed to provide the BOP with sufficient information concerning her alleged disability at the direction of her former counsel.  It was only when Plaintiff hired her current counsel in November 2003 that she finally provided the BOP with further documentation of her condition and, eventually, accepted Warden Winn's initial offer to reassign Reynoso to the satellite camp as an additional accommodation. In other words, regardless of the *reason* why Plaintiff failed to provide the BOP with sufficient information concerning her alleged disability, the evidence is undisputed that she *in fact* failed to provide the BOP with sufficient information concerning her alleged disability from January 8,

2003 to November 2003.  Both as a matter of fact and of law, that failure precludes her from establishing that the BOP had adequate knowledge of her disability.

3.   Even assuming *arguendo* that Plaintiff is a qualified disabled person under the Rehabilitation Act and that the BOP had sufficient knowledge of her disability, the BOP provided her with reasonable accommodations.  The evidence will show that Plaintiff made only two requests for accommodation.  Plaintiff made her first request on January 8, 2003, via Dr. Milowe, who stated: "If the patient's assailant was not on her work premises at all, Ms. O'Donnell would be able to work full-time without restrictions."  Later, on January 31, 2003, Dr. Milowe elaborated on his proposed accommodation, requesting "that [Plaintiff] not be required to work in the same facility at the same time as Mr. Reynoso."   The evidence will show, however, that since April 12, 2002, the BOP had made changes to Plaintiff's and Reynoso's schedules that achieved the very work conditions Dr. Milowe was seeking for his patient, which, according to Dr. Milowe's assessment, would allow Plaintiff to work.

Plaintiff's second request for accommodation, made on January 21, 2003 -- which exceeded the accommodations requested by Plaintiff's doctor -- called for the BOP to remove or terminate Reynoso.  The evidence will show, however, that Warden Winn informed Plaintiff on January 27, 2003, that the BOP could not grant such a request because, pursuant to BOP policy, the Office of Internal Affairs had to first investigate the allegations against Reynoso before issuing him punishment.  The evidence will further show that BOP policy required the Office of Internal Affairs to delay its investigation until the Ayer District Court adjudicated Reynoso for the criminal charges against him.   When the Office of Internal Affairs concluded its

investigation, sustaining the allegations of off-duty misconduct, the BOP suspended Reynoso without pay.

The evidence will further show that, although Plaintiff's former counsel indicated that Warden Winn would need to elaborate on this proposal, the Plaintiff will testify that she understood Warden Winn's proposal and that she believed that Warden Winn did not need to explain his proposal any further.

In sum, the evidence will show that, even though the Plaintiff consistently (and admittedly) failed to provide the BOP with adequate medical documentation concerning her PTSD, the BOP provided her with reasonable accommodations to enable her to work.

## 2.    FACTS ESTABLISHED BY THE PLEADINGS, STIPULATIONS, OR ADMISSIONS OF COUNSEL

1.   On August 31, 1998, Plaintiff Colleen O'Donnell began her employment with the Federal Bureau of Prisons ("BOP") as a correctional officer in the Custody Department at the Federal Medical Center in Devens, Massachusetts ("FMC Devens").  At some point, Plaintiff's position changed to Inmate Systems Officer ("ISO") in the Inmate Systems Management Department ("ISM") at FMC Devens.

2.   Plaintiff and a co-worker, David Reynoso, began dating exclusively in October of 1998, and lived together in Devens, Massachusetts, from October 1999 to at least October 2000. Their relationship was "on and off" for a couple more years and finally ended in April 2002. Reynoso worked in the Special Investigation Services ("SIS") Department at FMC Devens.

3.   During their duty-free lunch on April 8, 2002, Plaintiff and Reynoso left work and the FMC Devens property for the purpose of having a discussion about their relationship, and drove together to nearby Mirror Lake and got into an argument.

4. Following this incident, a state trooper who was patrolling Mirror Lake asked Plaintiff if she was well and if she needed a ride back to FMC Devens, which Plaintiff declined. Plaintiff then walked to the training center facility on the FMC Devens compound and called a co-worker for a ride back to the mail room.

5. When Plaintiff returned to the Main Room, she eventually called her immediate supervisor, Fernando Messer, to the Mail Room and told him about the incident at Mirror Lake. Messer instructed Plaintiff to report the incident immediately to Captain Bollinger.

6. A co-worker then drove Plaintiff to the main building to speak with Captain Bollinger and Dennis Duffy, the Special Investigative Agent. Plaintiff told Captain Bollinger about the incident and that she feared for her safety. Captain Bollinger instructed Plaintiff to file a criminal complaint with the state police, and asked Plaintiff's co-worker to drive Plaintiff to the state police barracks.

7. While at the state police barracks, Plaintiff filed a complaint against Reynoso. The co-worker then drove Plaintiff back to the main building at FMC Devens.

8. When Plaintiff returned to the main building that afternoon, she met with Warden David Winn and Cindy Lord, the Human Resource Manager, in the Warden's office to inform them of the incident with Reynoso.

9. Warden Winn placed Plaintiff on administrative leave and instructed her to apply for a restraining order. Warden Winn had another co-worker drive Plaintiff back to the state police barracks to pursue the restraining order against Reynoso.

10. Plaintiff went with a state trooper to Ayer District Court, which denied her request for a restraining order because she did not live in the district. The co-worker drove Plaintiff back

to FMC Devens and Plaintiff then drove to her relatives' home in Malden, Massachusetts, in her own vehicle. Plaintiff did not seek any medical treatment for her leg.

11. That night, while at her relatives' home, the Malden police department assisted Plaintiff in obtaining a 24-hour emergency restraining order from the Malden District Court.

12. On April 8, 2002, Warden Winn, in accordance with BOP's workplace violence policy, also convened a Workplace Violence Committee. The Workplace Violence Committee concluded that the incident between Plaintiff and Reynoso did not meet the definition of workplace violence, but that it had the "definite ability to result in workplace violence." The Committee decided to reconvene the following day to discuss the incident further based on how the state police responded to the incident.

13. Reynoso thereafter was arrested for Domestic Assault and Battery with a Dangerous Weapon (shod foot).

14. The next morning, the Workplace Violence Committee reconvened and learned that the state police had arrested Reynoso. The Committee recommended to Warden Winn that the BOP refer Plaintiff to the Employee Assistance Program ("EAP"), and place Reynoso upon indefinite suspension until resolution of the charges. The Committee gave its recommendations to Warden Winn in writing that same day.

15. That same day, after receiving the Committee's recommendation, Warden Winn received the Malden District Court's restraining.

16. Effective Monday, April 15, 2002, Warden Winn reassigned Plaintiff to perform her duties in the Mail Room during the hours 6:00 a.m. to 2:30 p.m., Monday through Friday.

Warden Winn also reassigned Reynoso, whose previous work hours were 8:00 a.m. to 4:00 p.m, to work only in the main facility 4:00 p.m. to 12:00 a.m., Monday through Friday.

17.   On January 3, 2003, the Ayer District Court held a hearing on the charges filed against Reynoso, and entered a finding of sufficient facts for a conviction of assault and battery with a dangerous weapon under M.G.L.A. 265 §15A(b), but continued the matter without a guilty finding until April 2, 2004.  The court ordered that Reynoso, as part of his probation, had to abide by all terms of the previously-entered restraining order and avoid contact with Plaintiff and her family.

18.   After receiving notice that the Ayer District Court had placed Reynoso on probation and continued his case without a finding, the BOP began its internal investigation of Reynoso's off-duty misconduct.   The BOP found the allegations off-duty misconduct to be true and suspended Reynoso without pay from July 27, 2003, through August 16, 2003.

19.   On January 8, 2003, Warden Winn maintained Plaintiff's assignment to the Mail Room, but with duty hours of 9:30 a.m. to 6:00 p.m., Monday through Friday.  At the same time, Warden Winn changed Reynoso's work hours to 12:00 a.m. to 8:00 a.m., Sunday through Thursday.

20.   On January 8, 2003, Plaintiff provided the BOP with  a note from George Milowe, M.D., Plaintiff's psychiatrist, which stated that: "This patient suffers from Post-Traumatic Stress Disorder [and] is now totally disabled [and] unable to work at her current job in the current circumstances.  If the patient's assailant was not on her work premises at all, Ms. O'Donnell would be able to work full-time without restrictions."

21.  After receiving Dr. Milowe's January 8, 2003 note, Steve Gagnon, the ISM Manager at FMC Devens, called the Plaintiff on January 9, 2003, and informed her that Warden Winn needed a written release from her to discuss her medical condition in detail with her physician.

22.  On January 9, 2003, Cynthia Lord, the Human Resource Manager at FMC Devens, sent Plaintiff an authorization to provide Dr. Milowe allowing him to release information to the BOP. After receiving no response to her this letter, Lord called the Plaintiff on January 14, 2003, and spoke with her about providing the BOP with additional information concerning her medical condition and supporting her absence from work.  During that conversation, Plaintiff informed Lord that she would sign the medical release.  O'Donnell Dep. at 192.  Lord also informed Plaintiff about the procedures for applying for leave without pay, advanced leave, and the BOP's Voluntary Leave Program.

23.  On January 21, 2003, Plaintiff sent Warden Winn an email requesting advance leave with pay "due to [her] medical condition."

24.  On January 23, 2003, Gagnon advised Plaintiff that BOP was granting her 24 hours of advanced sick leave to allow her to obtain the necessary medical information to support Dr. Milowe's January 8, 2003 letter.  Gagnon advised Plaintiff that Warden Winn would reconsider Plaintiff's request for advance sick leave if she provided her physician's assessment of her current clinical status and an estimate of her expected date of full or partial recovery.

25.  On February 19, 2003, Warden Winn disapproved Plaintiff's request for advanced sick leave.

26.  On January 27, 2003, Plaintiff submitted an application for the BOP's Voluntary Leave Transfer Program, which included a note from Dr. Milowe, stating that Plaintiff had

"work related" PTSD, severe anxiety, depression, recurrent nightmares, intrusive thoughts, flashbacks and one to two full blown panic attacks daily.

27.   On February 10, 2003, the FMC Devens Voluntary Leave Program Screening Committee denied Plaintiff's application.

28.   On January, 21, 2003, Samuel Rizzitelli, Plaintiff's attorney, wrote to Warden Winn and Lord, stating that he represented the Plaintiff and asking that Plaintiff be given a "reasonable accommodation for post traumatic stress disorder," or, alternatively, that Plaintiff be placed "on administrative leave or authorized to receive donated leave until she could return to work."

29.   On January 21, 2003, Plaintiff called Gagnon and, after Gagnon asked Plaintiff what would the BOP have to do to get her to return to work, stated that BOP would have to remove Reynoso.

30.   On January 27, 2003, Warden Winn wrote to Plaintiff explaining to her that he cannot "grant [her] accommodation request that another staff member be removed."   Warden Winn inquired whether Plaintiff also wanted him to restrict Reynoso to the "camp" area, which is a quarter of a mile from the main facility.

31.   On or about February 10, 2003, Plaintiff faxed to Warden Winn a letter from Dr. Milowe, stating that Plaintiff had Post Traumatic Stress Disorder as a result of being brutally assaulted by Reynoso.   Dr. Milowe further opined that Plaintiff suffered from Major Depression and Panic Disorder, and indicated that Plaintiff would remain "totally disabled" until separated from Mr. Reynoso.

32.   On April 23, 2003, the Malden District Court held another hearing concerning Plaintiff's restraining order against Reynoso, and extended the order to April 22, 2004.

33.  On June 4, 2003, the BOP received a handwritten note from Dr. Milowe, stating "I saw this patient today in the office.  She is now able to resume her job duties, including overtime."

34.  Warden Winn thereafter contacted Rizzitelli and informed him that Plaintiff could return to work on June 11, 2003.

35.  When Plaintiff returned to work on June 11, 2003, she submitted to Warden Winn a request for two days of leave to attend a wedding on June 20, 2003.  Warden Winn denied the request.

36.  On June 16, 2003, Officer J. Jacques, while performing security checks at the FMC Devens Mail Room at approximately 2 a.m., discovered threats and derogatory statements spray painted on the outside Mail Room walls directed at Plaintiff.

37.  In response, the BOP immediately contacted its Office of Internal Affairs; the Department of Justice, Office of Inspector General; and the Massachusetts State Police to investigate the incident.  In addition, on June 16, 2003, Warden Winn convened a Workplace Violence Committee Meeting to discuss the vandalism.  While the Committee found that the incident did not constitute workplace violence, it recommended allowing Plaintiff to work somewhere other than the Mail Room based upon Plaintiff's fear.

38.  Massachusetts State Police Officer Labrecque investigated the incident, but was unable to "draw enough evidence to make criminal charges upon any one particular suspect."

39.  On June 18, 2003, Warden Winn authorized Plaintiff to take Administrative Leave up through June 27, 2003, as a result of the June 16, 2003 incident.  Gagnon informed Plaintiff

that the BOP would grant Plaintiff the leave on a daily basis; therefore, Plaintiff had to contact the BOP each day she wanted to take leave.

40.  On June 23, 2003, Plaintiff provided Warden Winn with a note from Dr. Milowe, stating that "Due to retraumatization Monday 6-16-03 at work, Ms. O'Donnell is now totally disabled again."

41.  In response to Dr. Milowe's June 23, 2003 note, Gagnon informed Plaintiff that Warden Winn would continue to grant Plaintiff Administrative Leave through June 27, 2004, and advised her to apply for Leave Without Pay before her expected return-to-work date, June 30, 2003.  Gagnon informed Plaintiff that if she failed to submit a request for Leave Without Pay before her return-to-work date the BOP would place her on AWOL.

42.  On June 26, 2003, Plaintiff submitted a request for Leave Without Pay, which Warden Winn granted through July 29, 2003.  On July 28, 2003, Plaintiff requested Leave Without Pay to start on July 29, 2003, to an unspecified date.  Warden Winn granted Plaintiff's request through August 11, 2003, on the condition that Plaintiff provide an updated physician note to the BOP on August 11, 2003.  On August 11, 2003, Plaintiff again requested Leave Without Pay to start on August 11, 2003, to an unspecified date.  Warden Winn denied Plaintiff's request.

43.  On November 11, 2003, Plaintiff informed Warden Winn via facsimile that she wished to return to work "as soon as possible."  Plaintiff submitted with her facsimile a note from her new physician, Brian L. Ackerman, M.D., who stated that Plaintiff was "able to return to work full-time without any restrictions."

44.  On November 18, 2003, Warden Winn offered to allow Plaintiff to return to work at the satellite camp.  Warden Winn agreed to reassign Reynoso to the satellite camp and to a different shift during the tenure of the restraining order.  During the discussions between Plaintiff's counsel and the BOP, Warden Winn granted Plaintiff Administrative Leave from November 12, 2003, through November 14, 2003, and again November 17, 2003, through November 19, 2003.

45.  Plaintiff returned to work on November 20, 2003.

**3.     CONTESTED ISSUES OF FACT**

1.  Whether, on or after April 2002, Plaintiff suffered from PTSD.

2.   Whether, even if Plaintiff suffered from PTSD, that  condition substantially limited any of Plaintiff's  major life activities.

3.  Whether BOP had sufficient knowledge of her disability.

4.  Whether BOP provided Plaintiff with reasonable accommodations.

5.  Whether the accommodations requested by the Plaintiff were reasonable.

6.  Whether the BOP engaged in the interactive process with the Plaintiff.

7.  Whether the BOP discriminated against the Plaintiff based on her disability.

8.  Whether the Plaintiff suffered damages.

**4.     <u>JURISDICTIONAL QUESTIONS</u>**

None. .

**5.     <u>QUESTIONS RAISED BY PENDING MOTIONS</u>.**

There are no motions currently pending before the Court at this time.

**6.    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, TOGETHER WITH SUPPORTING AUTHORITY**

There are no issues of law pending before the Court at this time.

**7.    REQUESTED AMENDMENTS TO THE PLEADINGS**

None

**8.    ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION**

None

**9.    PROBABLE LENGTH OF THE TRIAL**

The parties anticipate that trial will last approximately two weeks (assuming a standard four-hour day).

**10.    WITNESSES**

**Plaintiff**

The plaintiff anticipates calling some or all of the following witnesses during its case-in-chief:

The plaintiff anticipates calling some or all of the following witnesses during its case-in-chief:

1.    Colleen O'Donnell          **Plaintiff—fact witness**
       15 Ware Drive
       Baldinville, MA 01436

2.    Joseph Lavarato           **Plaintiff's husband—fact witness**
       15 Ware Drive
       Baldinville, MA 01436;

3.    David L. Winn, Warden     **Fact witness**
       FMC Devens
       42 Patton Drive
       Ayer, MA 01432

4.    Cynthia Lord, HR Manager  **Fact witness**
       FMC Devens
       42 Patton Drive
       Ayer, MA 01432

5.      James Fletcher              **Fact witness**
        FMC Devens
        42 Patton Drive
        Ayer, MA 01432

6.      Victor J. Carbone, Ed., N.C.C., N.C.S.P., D.A.B.F.E,
         Family Psychological Health Center
        1188 Parker Street, Suite 1
        Springfield, MA 01129-1042
        **(Expert/Medical Witness)**

7.      George Milowe, M.D.         **Plaintiff's treating doctor—fact witness**
        11 Bickford Road
        Malden, MA 02148

8.      Brian L. Ackerman, M.D.     **Plaintiff's treating doctor—fact witness**
        11 Strawberry Hill Road
        Acton, MA 01720;

9.      Barbara Wissner, M.D.       **Plaintiff's treating doctor—fact witness**
        747 Main Street
        Concord, MA 01742

10.     David Reynoso               **Fact witness**
        FMC Devens
        42 Patton Drive
        Ayer, MA 01432

11.     Stephen Gagnon              **Fact witness**
        FMC Devens
        42 Patton Drive
        Ayer, MA 01432

12.     Mark Shaughnessy            **Fact witness**
        140 ½ Pine Street
        Nassua, NH 03060

13.     Susan Bates, M.D., **(address unknown at this time)**      **Fact witness**

14.     Kenneth Nichols             **Fact witness**
        42 Patton Drive
        Ayer, MA 01432

**<u>Defendant</u>**

The government anticipates calling some or all of the following witnesses during its case-in-chief:

      1.      David L. Winn      **Fact Witness**
              Retired Warden
              c/o Federal Medical Center, Devens
              42 Patton Drive
              Ayer, MA 01432

      2.      Steven Gagnon      **Fact Witness**
              ISM Manager
              Federal Medical Center, Devens
              42 Patton Drive
              Ayer, MA 01432

      3.      Cynthia Lord      **Fact Witness**
              Human Resources Manager
              Federal Medical Center, Devens
              42 Patton Drive
               Ayer, MA 01432

      4.      James Fletcher      **Fact Witness**
              Federal Medical Center, Devens
              42 Patton Drive
              Ayer, MA 01432

      5.      Trooper EA Labrecque      **Fact Witness**
              Massachusetts State Police
              Station C-9, SP Devens
              59 Buena Vista Street
              Devens, MA 01433

      6.      Allison Fife, M.D., M.P.H.      **Expert/Medical Witness**
              148 Linden Street
              Suite 105A
              Wellesley, MA 02482

**11.** **PROPOSED EXHIBITS**

    **A.** **Plaintiff**

The plaintiff intends to offer some or all of the exhibits listed below during its case-in-chief.

| | | |
|---|---|---|
| 1. | 3/23/02 | Message from Reynoso to Colleen. |
| 2. | 4/9/02 | Complaint for Protection from Abuse. |
| 3. | 4/9/02 | Affidavit of Colleen O'Donnell. |
| 4. | 4/10/02 | Memo to Dr. Susan Bates from Steve Gagnon referring Colleen O'Donnell to the Employee Assistance Program (EAP). |
| 5. | 4/12/02 | Memo from Warden to Colleen assigning her to mailroom from 6:00 am to 2:30 pm and requiring her to leave institution no later than 3:00 pm. and to notify her supervisor if planning to work overtime and no contact with Reynoso allowed. |
| 6. | 4/21/02 | Notification of Personnel Action. |
| 7. | 4/23/02 | Abuse Prevention Order. |
| 8. | 5/13/02 | Memo from Colleen to Warden asking him to address her safety concerns re: Reynoso remaining working at facility after active abuse order. |
| 9. | 6/10/02 | Memo to Steve Gagnon from Colleen re: safety issues. |
| 10. | 6/12/02 | Memo to Warden Winn from Colleen re: request for another assessment of workplace violence. |
| 11. | 6/13/02 | Memo to Colleen from Warden re: overtime (sign up when Reynoso not in facility) inform supervisor if called for and accept overtime. |
| 12. | 6/16/02 | Overtime Authorization. |
| 13. | 6/17/02 | Memo from Warden re: overtime same as the memo of 6/13. |

| 14. | 6/20/02 | Memo from Warden to Colleen re: overtime. |
| 15. | 1/4/03 | Call log received call from Colleen requesting extension to return medical release.  Explained procedures for VLTP and Requesting LWOP. |
| 16. | | Document Chapter 6 explaining LWOP and granting LWOP. |
| 17. | 1/3/03 | Criminal Docket. |
| 18. | 1/6/03 | Memo to Warden from Colleen telling him outcome of Reynoso trial. |
| 19. | 1/8/03 | Memo to Lieutenants from Warden re: not scheduling overtime at same time for Reynoso and O'Donnell they are not to come in contact at the institution. |
| 20. | 1/8/03 | letter to Colleen from Warden re: effective 1/13 assigned regular duties in ISM Monday – Friday 9:20 am – 6:00 pm. |
| 21. | 1/8/03 | Dr. Milowe note stating Colleen suffers from Post Traumatic Stress Disorder. |
| 22. | 1/9/03 | Memo to Warden from Gagnon re: phone conversation with Colleen asking for written medical release and informing Colleen that she needed to send in a written request for leave with out pay (LWOP) to Warden for approval. |
| 23. | 1/9/03 | Letter to Colleen from MS Lord with medical authorization she needs to sign. |
| 24. | 1/09/03 | Letter to Dr. Milowe releasing him to provide her medical records to the institution or its dr., etc. |
| 25. | 1/21/03 | Memo to Warden from Dr. Fletcher regarding Dr. Milowe's medical records concerning Colleen O'Donnell his opinion. |
| 26. | 1/21/03 | Memo from Colleen to Warden requesting leave without pay due to medical condition. |
| 27. | 1/21/03 | Letter from Rizzitelli to Warden and HR manager, Cindy Lord informing them he has been retained by Colleen. |

28.  1/21/03  Memo to Warden from Steve Gagnon re: phone conversation with Colleen O'Donnell re: accommodation and her request for the removal of Reynoso from institution.

29.  1/22/03  Letter to Colleen from Warden requesting she inform institution in writing if she had in fact retained Samuel Rizzetelli and enclosing copy of letter Warden received from her counsel.

30.  1/23/03  Letter to Rizzitelli from Warden requesting documentation proving he is Colleen's representative.

31.  1/23/03  Letter to Colleen from Steve Gagnon granting 24 hours of sick leave in order to obtain requested medical documentation if she wants advanced sick leave. Requesting she also submit form 71 or AWOL status will begin 2/3/03.

32.  1/27/04  Colleen's voluntary leave transfer and voluntary leave bank application. 1/28/03 Dr's note re: work related stress disorder to submit with above application.

33.  1/27/03  ltr from Warden to Colleen advising unable to grant an accommodation requesting another staff member be removed.  Will accommodate by restricting work area to the camp.

34.  2/19/03  Letter from Dr. Milowe to Steve Gagnon re: Colleen's continued disability

35.  1/31/03  Unsigned retainer agreement and outline of legal issues from Rizzitelli to Colleen.

36.  2/10/03  Memo to Colleen from VLTP refusing her request for VLTP since her emergency was based upon another staff member's employment with the bureau.

37.  2/10/03  Letter to Warden from Attorney Rizzitelli stating he represents Colleen. Please elaborate on accommodation of restricting Reynoso to camp. Please return Colleen to pay status immediately.

38.  2/10/03  Payroll listing for Colleen.

39.  2/11/04  Memo to Colleen from VLTP Committee refusing her request for VLTP since her work site has been afforded an accommodation in order for her to return to work.

40.  2/19/03  Request for Leave or Approved Absence.

41.    2/19/03    Letter from Warden to Colleen stating he will not approve any advanced sick leave in response to her 2nd request for same.

42.    3/4/03    Letter to Rizzitelli from FBOP staff attorney Zgrodnik telling him what info FBOP required in order to consider him the representative of Colleen.

43.    3/4/03    Written memo from Colleen to Warden informing him that Rizzitelli represents her in all employment and legal matters.

44.    3/6/03    Letter to Rizzitelli from Warden stating Colleen does not meet the qualifications of disabled person under the Americans with Disability Act, he had provided accommodation changing Reynoso's shift and duty location to the camp. The VLT Committee met and determined Colleen was not eligible for VLTP. Colleen is now considered AWOL.

45.    3/10/03    Letter from Rizzitelli to Warden saying AWOL not appropriate status for Colleen.

46.    3/10/03    Memo to Warden from Karen Parrot that meeting between Colleen and Nichols had been held in her office without her permission.

47.    3/19/03    Request for EEO counseling by Colleen; notice of rights and responsibilities in the EEO Complaint process; notice of possible applicability of the negotiated grievance procedure (29 c.f.r. part 1614).

48.    3/21/043    Memo to Warden from Stephen Gagnon re: call from Colleen as to AWOL status he informed her she was on that status and told her he could not speak with her re: questions needed to be done through her attorney. Letter to Rizzitelli from Warden re: Colleen's contacting supervisor re: return to work.

49.    3/24/03    Letter to Warden from Rizzitelli asking about the accommodation of Reynoso restricted to camp.

50.    3/27/03    Memo to Mina Raskin EEO officer from Colleen stating receipt of documentation to file a formal complaint with EEO.

51.    3/27/03    Chronology of EEO counseling/EEO counselors report; EEO counselors checklist; frequently asked questions about mediation

52.    3/27/03    Notice of Right to file a discrimination complaint from EEO counselor to Colleen.

| 53. | 3/27/03 | Memo to Raskin EEO officer stating mr. nichols EEO counselor had taken receipt of EEO counselors report, Notice of Right to File a Discrimination Complaint, Notice of EEO time lines and Complaint form in order to continue to pursue Complaint process. 2nd memo that Colleen now to be identified as Complainant. |
|---|---|---|
| 54. | 3/27/03 | E-mail to Rizzitelli from Angela Rush at OSC asking permission to speak to Colleen. |
| 55. | 4/03/03 | Warning to Colleen re: AWOL. |
| 56. | 4/03/03 | Affidavit of Colleen submitted to FBOP concerning absence without official leave. |
| 57. | 4/13/03 | Record of call conversation used by FBOP re: Colleen O'Donnell's plea for help to her congressman. |
| 58. | 4/15/03 | Letter to Congressman Markey from FBOP Keith Hall HR Department. |
| 59. | 4/22/03 | Memo from Colleen updating staff members of extension of restraining order to 4/22/04. |
| 60. | 4/29/03 | Memo to Warden re: attached fax received in Lieutenant's OFC which is fax from Dr. Milowe allowing Colleen to resume her job duties. |
| 61. | 5/16/03 | Letter to Colleen from Mina Raskin asking for reason for delay in contacting EEO counselor. |
| 62. | 5/28/03 | Letter from Rizzitelli to EEO specialist Clay Ackiss addressing concern re: timeliness of contact with EEO counselor by Colleen. |
| 63. | 6/4/03 | Letter from Rizzitelli to the Warden asking for information regarding Reynoso as Colleen prepares to return to work. |
| 64. | 6/9/03 | Letter from Rizzitelli to Warden awaiting response to Colleen being cleared to return to work. |
| 65. | | Letter from Warden to Rizzitelli stating awaiting Colleen returning to work June 11. Stating issues between Reynoso and Colleen had been resolved by the courts of the commonwealth and Colleen to report for her regular duty on 6/11/03. |

66.   6/18/03   Letter from Colleen's treating doctor that due to her being again traumatized on Monday 6/16/03 she was now totally disabled and unable to work again.

67.   6/18/03   Letter to Colleen from Steve Gagnon re: her being placed on administrative leave for up to ten work days but must contact institution daily.

68.   6/19/03   Memo to Cindy Lord, HR Manager from Steve Gagnon re: Ms. O'Donnell not yet that day contacting him or Mr. Amico.

69.   6/23/03   Letter to Colleen from Steve Gagnon stating received her dr.'s note re: disabled. Warden will grant Colleen administrative leave until Monday, 6/27. if not able to return to work then Colleen must request LWOP to avoid being on AWOL status.

70.   6/26/03   Memo from Colleen to the Warden where she requests leave and requests an application and instructions for medical retirement be mailed to her.

71.   6/30/03   Leter from Cindy Lord in HR to Colleen request leave without pay approved for 30 days LWOP until 7/29/03 must reapply at that time if necessary also enclosed forms for disability retirement.

72.   8/11/03   Request for Leave or Approved Absence by Colleen –denied by Warden.

73.   8/13/03   Letter from Gagnon re: addition LWOP has been denied and now Colleen is being placed on AWOL.

74.   10/18/03   Letter to Warner Coffman EEO investigator from Colleen enclosing her responses to interrogatories, which were sent to her by EEO investigator and includes her affidavit and responses (11 pages).

75.   12/10/03   Warning employee required to provide information re: AWOL interview.

76.   12/10/03   Affidavit of Colleen O'Donnell re: AWOL investigation and her oath re same.

77.   12/16/03   Letter from Dr. Brian Ackerman re Colleen's medical status

78.           Complaint number p-2003-0165 includes Part I the Complaint; Part II the Investigation; Part III issues in complaint; Part IV Remedies sought by Complainant; Part V other information related to the complaint; Part VI Affidavits of Colleen O'Donnell; David Winn, Warden; James R. Fletcher, Chief Psychiatrist for FBOP; Cynthia Lord HR Manager FBOP; Stephen Gagnon, Inmate Systems Manager, FBOP.

79.                    Colleen O'Donnell's medical records from Dr. Milo.

80.                    Colleen O'Donnell's medical records from Dr. Ackerman.

81.                    Colleen O'Donnell's medical records from Dr. Wisner.

82.                    Psychological Evaluation of Colleen O'Donnell from Dr. Victor Carbone.

83.                    Letter of representation from Attorney Dawn D. McDonald to David Winn.

84.                    Letter to Attorney Kelly McDonald from Attorney Dawn D. McDonald dated November 18, 2003.

85.                    Curriculum Vitae of Dr. Victor Carbone.

86.                    Letter to David Winn from Attorney Dawn D. McDonald, dated May 12, 2004, re: opposition to supervisor's proposed discipline.

87.                    Memo from Cindy Lord to Marcy Sandum, dated April 30, 2003.

88.                    Affidavit of Cindy Lord.

89.    3/31/03      OIA Investigative Report.

90.    7/8/03        Letter suspending Reynoso.

91.    11/11/03    Fax to Warden Winn from Colleen O'Donnell.

92.                    Position description for Inmate Systems Officer.

93.    3/17/97      Program Statement-Workplace Violence Prevention.

94.    4/8/02        Workplace Violence Committee Meeting Memo #1.

95.    4/8/02        Workplace Violence Committee Meeting Memo #2.

96.    1/8/03        Letter from Warden to Reynoso re: shift change.

97.    6/16/03      Incident Report re: Vandalism of Mailroom.

98.    6/16/03      Memo from Workplace Violence Committee to Warden re: Mailroom Incident.

99.     11/18/03     Letter from Warden to O'Donnell assigning her to the Camp.

100.    4/20/04      Letter to O'Donnell from Gagnon proposing 30 day suspension.

101.    6/10/04      Letter recommending reprimand.

102.    6/10/04      Letter of reprimand.

103.                 Reynoso's Declaration for Federal Employment.

104.    Various BOP Policies, including BOP Standards of Employee Conduct.


   **B.     <u>Defendant</u>**

The government intends to offer some or all of the exhibits listed below during its case-in-chief:

1.      Abuse Prevention Order, Trial Court of Massachusetts (BOP 0018-0019)

2.      Program Statement 3730.04, U.S. Department of Justice, Federal Bureau of Prisons (BOP4943-4947)

3.      Memorandum from Workplace Violence Committee to David L. Winn, Warden, dated April 8, 2002 (BOP5670-5673)

4.      Modified Memorandum from Workplace Violence Committee to David L. Winn, Warden (BOP5674-5677)

5.      Letter from David L. Winn, Warden, to Colleen O'Donnell, dated April 12, 2002 (BOP5275)

6.      Letter from David L. Winn, Warden, to David Reynoso, dated April 12, 2002

7.      Memorandum from Colleen O'Donnell to David L. Winn, Warden, dated May 13, 2002 (BOP5110)

8.   Memorandum from Colleen O'Donnell for Steve Gagnon, dated June 10, 2002 (BOP5112)

9.   Memorandum from Colleen O'Donnell for David L. Winn, Warden, dated June 12, 2002

10.  Relevant pages of Hearing Transcript, Docket Sheet, and Probation form, Commonwealth v. David Reynoso, dated January 3, 2003 (BOP5456-5457, 5471-5472, 5402-5403)

11.  Memorandum from Colleen O'Donnell for David L. Winn, Warden, dated January 6, 2003 (BOP 5103)

12.  Investigative Report, Office of Internal Affairs, Federal Bureau of Prisons

13.  Letter from David L. Winn, Warden, to David Reynoso, dated July 8, 2003

14.  Letter from David L. Winn, Warden to Colleen O'Donnell, dated January 8, 2003

15.  Letter from David L. Winn, Warden to David Reynoso, dated July 8, 2003 (BOP1454{

16.  Note from Dr. Milowe, dated January 8, 2003

17.  Memorandum from James Fletcher, M.D. for David L. Winn, Warden, dated January 21, 2003 (BOP0112)

18.  Memorandum from Stephen D. Gagnon to David L. Winn, Warden, dated January 9, 2003 (BOP0114)

19.  Letter from Cynthia A. Lord to Colleen O'Donnell, dated January 9, 2003 (BOP0022-0023)

20. Memorandum from Colleen O'Donnell to David L. Winn, Warden, dated January 21, 2003 (BOP0107)

21. Letter from Stephen Gagnon to Colleen O'Donnell, dated January 23, 2003 (BOP0105-0106)

22. Request for Leave or Approved Absence, faxed February 11, 2003 (BOP0093)

23. Letter from David L. Winn, Warden, to Colleen O'Donnell, dated February 19, 2003 (BOP0097)

24. Voluntary Leave Transfer Program Application, dated January 27, 2003

25. Memorandum from Rick Harnes to Colleen O'Donnell, dated February 10, 2003 (BOP0031)

26. Letter from Samuel Rizzitelli, Jr. to David L. Winn, Warden and Cindy Lord, dated January 21, 2003 (BOP0024)

27. Memorandum from Stephen D. Gagnon to David L. Winn, Warden, dated January 21, 2003 (BOP0110)

28. Letter from David L. Winn, Warden to Colleen O'Donnell, dated January 27, 2003 (BOP5098)

29. Letter from Dr. Milowe to Stephen Gagnon, dated January 31, 2003

30. Letter from Samuel Rizzitelli, Jr. to David L. Winn, Warden, dated February 10, 2003 (BOP0028)

31. Handwritten memorandum from Colleen O'Donnell to David L. Winn, Warden, daed March 4, 2003 (BOP0090)

32.     Letter from David L. Winn, Warden to Samuel Rizzitelli, Jr., dated March 8, 2003 (BOP5627)

33.     Letter from David L. Winn, Warden, to Samuel Rizzitelli, Jr., dated March 21, 2003  (BOP0080)

34.     Letter from Samuel Rizzitelli, Jr., to David L. Winn, Warden, dated March 24, 2003 (BOP5617)

35.     Abuse Prevention Order, Trial Court of Massachusetts, dated April 23, 2003 (BOP 0020)

36.     Note by Dr. Milowe, dated May 28, 2003.

37.     Letter from David L. Winn, Warden, to Samuel Rizzitelli, Jr. (BOP 0033)

38.     Plaintiff's Time Sheet for pay period June 1, 2003, to June 14, 2003

39.     Memorandum for David L. Winn, Warden, dated June 10, 2003, with Warden Winn's handwritten denial of June 11, 2003

40.     Memorandum for Michael Bollinger, Captain, dated June 16, 2004 (BOP1309)

41.     Referral of Incident, re incident dated June 16, 2003 (BOP1261)

42.     Memorandum for David L. Winn, Warden, re: Workplace Violence Committee Meeting, dated June 16, 2003 (BOP1276-1277)

43.     Report of Investigation, Trooper EA Labrecque (BOP1269-1273)

44.     Letter from Stephen Gagnon to Colleen O'Donnell, dated June 18, 2003 (BOP0057)

45.     Note by Dr. Milowe, dated June 18, 2003

46.   Letter from Stephen Gagnon to Colleen O'Donnell, dated June 23, 2003 (BOP0035)

47.   Memorandum from Colleen O'Donnell to David L. Winn, Warden, dated June 26, 2003 (BOP0036)

48.   Request for Leave or Approved Absence form, dated July 28, 2003 (BOP0043)

49.   Request for Leave or Approved Absence form, dated August 11, 2003 (BOP0044)

50.   Letter from Stephen Gagnon to Colleen O'Donnell, dated August 13, 2003 (BOP0060)

51.   Facsimile and Attachment from Colleen O'Donnell to David L. Winn, Warden, dated November 11, 2003

52.   Letter from David L. Winn, Warden, to Colleen O'Donnell, dated November 18, 2003 (BOP4960-4961)

53.   Letter from Kelly L. McDonald, to Dawn D. McDonald, dated November 19, 2003

54.   Affidavit of Colleen O'Donnell, dated December 10, 2003 (BOP0049-0051)

55.   Letter from Stephen Gagnon to Colleen O'Donnell, dated April 20, 2004 (BOP0045-0047)

56.   Letter from David L. Winn, Warden, to Colleen O'Donnell, dated June 10, 2004 (BOP 0002-0003)

56.   Letter from David L. Winn, Warden, to Colleen O'Donnell, dated June 10, 2004 (BOP 0001)

57.   Curriculum Vitae of Allison Fife, M.D., M.P.H.

Respectfully submitted,

The Plaintiff,                                      The Defendant,

By Her Attorney                                    By Her Attorneys

 /s/ Dawn D. McDonald                              MICHAEL J. SULLIVAN
DAWN D. McDONALD                                   United States Attorney
Attorney at Law
Cooley & Shrair                                     /s/ Mark T. Quinlivan
1380 Main Street                                   MARK T. QUINLIVAN
Springfield, MA 01103                              Assistant U.S. Attorney
(413) 781-0250                                     John Joseph Moakley U.S. Courthouse
                                                   1 Courthouse Way, Suite 9200
                                                   Boston, MA  02210
                                                   (617) 748-3606

Dated:  May 30, 2007